[No. D020035. Fourth Dist., Div. One. June 17, 1994.]

PSC GEOTHERMAL SERVICES COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF IMPERIAL COUNTY, Respondent;
IMPERIAL COUNTY DISTRICT ATTORNEY, Real Party in Interest.

## COUNSEL

Morgan, Lewis & Bockius, C. G. Gordon Martin, Andrea Sheridan Ordin, Gray, Cary, Ames & Frye, Gray, Cary, Ware & Freidenrich, Jay W. Jeffcoat, Marcelle E. Mihaila. Coleman & Marcus, Michael D. Marcus, McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish, David S. MacCuish, Patrick W. Dennis, Malcolm C. Weiss, Eugene A. Burrus, Landels, Ripley & Diamond, James A. Bruen and Melinda L. Haag for Petitioners.

No appearance for Respondent.

William E. Jaynes, District Attorney, Joseph F. Beard, Assistant District Attorney, and Gale M. Filter for Real Party in Interest.

## OPINION

**KREMER, P. J.**—PSC Geothermal Services Company (PGS) and Ormesa Operators are being investigated by the Imperial County District Attorney (District Attorney) and the Department of Toxic Substance Control for the alleged improper disposal of geothermal filters at a local landfill. Petitioners' attorneys engaged the services of Environ and Analytical Technologies Inc.

(ATI), environmental consultants, to assist in preparing the defense against potential civil and criminal suits. On October 28, 1993, search warrants were executed on the environmental firms. The warrants sought "all correspondence, paper, electronic or otherwise . . ." from employees at Environ and "correspondence" from those at ATI to lawyers at the firm representing PGS. PGS complains the District Attorney did not follow the special master procedures set out in Penal Code section 1524, the court did not grant a hearing to determine whether the items in question are privileged, the court erroneously sealed the affidavit in support of the search warrant and the court would not allow PGS to number and copy the seized material. PGS[1] brought a petition for writ of mandate to this court and a stay was issued. After issuance of the alternative writ and oral argument, we grant the petition in part by directing the superior court to allow petitioner access to the allegedly privileged matter so it will have the opportunity to bring motions to determine whether any of the materials are privileged, work product or beyond the scope of the warrant. In addition, the court is directed to hold a hearing to determine whether the official information privilege applies to the affidavit in support of the search warrant. In all other respects the petition is denied.

I

*Special Master Provisions*

Petitioners object to the seizure of materials from the workplaces of their consultants. They argue the seizure was improper because the special master provisions of Penal Code[2] section 1524 were not employed and suggest that all the seized materials must be returned.

Section 1524 provides, in pertinent part: "[N]o search warrant shall issue for any documentary evidence in the possession or under the control of any person, who is a lawyer as defined in Section 950 of the Evidence Code, a physician as defined in Section 990 of the Evidence Code, a psychotherapist as defined in Section 1010 of the Evidence Code, or a clergyman as defined in Section 1030 of the Evidence Code, and who is not reasonably suspected of engaging or having engaged in criminal activity related to the documentary evidence for which a warrant is requested unless [certain procedures] have been complied with . . . ." (§ 1524, subd. (c).)

---

[1]Ormesa Operators joined in the petition. Ormesa is threatened with civil litigation and retained these same experts to assist in their defense.

[2]All statutory references are to the Penal Code unless otherwise specified.

Under the statutory procedures, the court is required to appoint a "special master"[3] to accompany the person(s) serving the warrant. (§ 1524, subd. (c)(1).) When the warrant is served, the special master must "inform the party served of the specific items being sought and that the party shall have the opportunity to provide the items requested. If the party, in the judgment of the special master, fails to provide the items requested, the special master shall conduct a search for the items in the areas indicated in the search warrant." (§ 1524, subd. (c)(1).) If the party served with the search warrant "states that an item or items should not be disclosed, they shall be sealed by the special master and taken to court for a hearing." (§ 1524, subd. (c)(2).) At the hearing, the party served with the search warrant may object to the disclosure of privileged items and may otherwise challenge the validity of the search and seizure. (§ 1524, subd. (c)(2).)

 The trial court found section 1524 did not apply here because the offices searched were those of environmental consultants who are not expressly named in the statute and thus not covered by it. PGS argues the seized materials, although physically located at the consultants' offices, were still under the control of the attorney and, thus, were covered by the statute.[4]

In construing a statute, the task of the court is to determine and give effect to the Legislature's intent. (*Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1095 [282 Cal.Rptr. 841, 811 P.2d 1025]; *People* v. *Freeman* (1988) 46 Cal.3d 419, 425 [250 Cal.Rptr. 598, 758 P.2d 1128].) The court begins with the language used. (*Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 91 [255 Cal.Rptr. 670, 767 P.2d 1148].) The court attempts to give effect to the usual, ordinary import of the language and to avoid making any language mere surplusage. (*Regents of University of California* v. *Public Employment Relations Bd.* (1986) 41 Cal.3d 601, 607 [224 Cal.Rptr. 631, 715 P.2d 590]; *Fontana Unified School Dist.* v. *Burman* (1988) 45 Cal.3d 208, 218 [246 Cal.Rptr. 733, 753 P.2d 689].) "The words must be construed in context in light of the nature and obvious purpose of the statute where they appear. [Citation.]" (*Decker* v. *City of Imperial Beach* (1989) 209 Cal.App.3d 349, 354 [257 Cal.Rptr. 356].) The statute "must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than

---

[3]Section 1524, subdivision (d) defines a "special master" as "an attorney who is a member in good standing of the California State Bar and who has been selected from a list of qualified attorneys which is maintained by the State Bar particularly for the purposes of conducting the searches described in this section. . . ."

[4]If the attorney himself is a suspect in criminal activity, then the special master provision does not apply. (§ 1524, subd. (c)(1).) Here the District Attorney suggests section 1524 does not apply because the petitioners are involved in criminal acts. However, there is no evidence in the record before this court to support that assertion.

technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. [Citations.]" (*Beaty* v. *Imperial Irrigation Dist.* (1986) 186 Cal.App.3d 897, 902 [231 Cal.Rptr. 128].)

Initially, we note the language of the statute itself indicates it applies only to four designated professionals, i.e., attorneys, physicians, psychotherapists and clergymen; the statute does not expressly extend the special master provisions to others such as consultants or experts hired by those professionals. Significantly, the designated professionals are defined by reference to Evidence Code provisions which relate to privileges, i.e., the attorney-client privilege (Evid. Code, § 950 et seq.), the physician-patient privilege (Evid. Code, § 990 et seq.), the psychotherapist-patient privilege (Evid. Code, § 1010 et seq.) and the clergyman-penitent privilege (Evid. Code, § 1030 et seq.). The language of the statute, by specifying the four professional groups as limited by definitional provisions in the Evidence Code, reflects a legislative intent to limit the special master procedures to the four named professionals and to protect attendant privileges and not to extend the special master procedures to other professionals, such as experts and consultants, who might be hired by the named professionals.

PGS argues the Legislature's use of the terms "in the possession *or under the control* of any person, who is a lawyer" in section 1524, subdivision (c) (italics added) shows an intent to include not only documentary evidence in a lawyer's office but also in the offices of a consultant hired by a lawyer because documentary evidence in the consultant's office may be said to be in the lawyer's constructive possession or "under the control" of the lawyer.

To support its argument, PGS points to cases involving the possession of contraband, particularly "constructive possession" cases. (See *People* v. *Showers* (1968) 68 Cal.2d 639, 643-644 [68 Cal.Rptr. 459, 440 P.2d 939]; *Armstrong* v. *Superior Court* (1990) 217 Cal.App.3d 535, 538-539 [265 Cal.Rptr. 877]; see also CALJIC No. 1.24.) Initially, we hesitate to import the definition of "possession" from contraband cases into the special master provisions. The term "possession" in those cases evolved in the context of public polices, of questionable relevance here, regarding culpability for possessing contraband. (*Armstrong* v. *Superior Court, supra,* 217 Cal.App.3d at p. 539.) To that extent at least, the term "possession" as used in cases of contraband crimes has a specialized meaning.

In contraband cases, a defendant may be found guilty of possessing contraband if he has actual or "constructive" possession of the contraband. "Constructive possession exists when a defendant 'maintains control or a right to control the contraband.' [Citation.]" (*Armstrong* v. *Superior Court,*

*supra*, 217 Cal.App.3d at p. 538.) We have observed: "For purposes of drug transactions, the terms 'control' and 'right to control' are aspects of a single overriding inquiry into when the law may punish an individual who is exercising such a degree of intentional direction over contraband that he can be justifiably and fairly punished in the same manner as if he were indeed in actual physical possession of a controlled substance." (*Armstrong* v. *Superior Court, supra*, 217 Cal.App.3d at p. 539.) "[T]he concepts of 'control' and 'right to control' " are not clearly defined, even in contraband cases, but the Supreme Court has held a defendant has "constructive possession" if he maintains " 'some control or right to control over contraband in the physical possession of another.' " (*Id.* at pp. 538-539, italics omitted.)

Second, even if we were to apply the constructive possession rationale used in contraband cases, we would not conclude the Legislature intended section 1524 to include searches of the offices of consultants hired by attorneys.

■ We do not believe an attorney has "constructive possession" of either a consultant's offices or files merely because the attorney has hired the consultant for a particular project. The offices and files of consultants are not mere extensions of an attorney's offices and files. Consultants do not merely hold files for an attorney's benefit; the files belong to the consultants. An attorney does not have direct control over the files or offices. It is the consultant who controls the files and offices, e.g., the attorney does not have a right to access the files and offices of the consultant. An attorney who hires a consultant may have a right to a final report, but the files of the consultant are not subject to the attorney's control. Since an attorney does not have control over the offices or files of a consultant, an attorney cannot be said to have "constructive possession" of the consultant's files.

PGS also relies on civil pretrial discovery cases to support its argument the Legislature's use of the terms "in the possession *or under the control* of any person, who is a lawyer" (§ 1524, subd. (c), italics added) shows an intent to include the offices of consultants hired by lawyers. As PGS explains, "it is well settled that documents or information delivered to an attorney by a party are deemed to still be within the party's possession, custody and control for compliance with civil discovery obligations."[5] Here, of course, we do not have a situation where documents were delivered by a party to an attorney nor a situation where a party's possession is being imputed to the attorney or vice versa. Here, we have a search of files not in the possession of either the party or its attorney.

---

[5]In support, PGS cites *Unger* v. *Los Angeles Transit Lines* (1960) 180 Cal.App.2d 172, 175 [4 Cal.Rptr. 370] and *Bank of America* v. *Frost* (1962) 205 Cal.App.2d 614, 619 [23 Cal.Rptr. 441].

Nor do we have a situation involving an obligation by a party or attorney to obtain documents from a third party for purposes of disclosure under civil discovery provisions. Here, we have a search by the government under the auspices of a search warrant of premises belonging to consultants which were neither under the control nor possession of the attorneys.

We conclude the contraband and civil discovery cases relied on by PGS do not support a conclusion the Legislature intended to extend the special master procedures of section 1524 to the offices of consultants or experts hired by an attorney.

Our conclusion the Legislature did not intend the broad interpretation proposed by PGS but intended to limit the special master procedures to the offices of lawyers, doctors, psychotherapists and clergymen is also supported by the legislative history of section 1524.

Section 1524, which generally governed searches pursuant to warrants, was amended in response to the United States Supreme Court's decision in *Zurcher* v. *Stanford Daily* (1978) 436 U.S. 547 [56 L.Ed.2d 525, 98 S.Ct. 1970]. (See Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 1609 (1979-1980 Reg. Sess.) as introduced; Floor Statement on Assem. Bill No. 1609 by Assemblyman Mel Levine [State Archives]; 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Exclusion of Illegally Obtained Evidence, § 2426, p. 2877.) In *Zurcher*, the police, pursuant to a warrant, searched the offices of a university newspaper which was not involved in any criminal activity, for photographs of demonstrators who had assaulted police officers. The United States District Court (District Court) ruled the Fourth and Fourteenth Amendments prohibited issuing a warrant to search for items possessed by a person who was not suspected of a crime unless facts in an affidavit established probable cause to believe a subpoena duces tecum would be impracticable. The Supreme Court rejected the District Court's conclusion, explaining, it was "an understatement to say that there is no direct authority in this or any other federal court for the District Court's sweeping revision of the Fourth Amendment." (*Zurcher* v. *Stanford Daily*, *supra*, 436 U.S. at p. 554 [56 L.Ed.2d at p. 534], fn. omitted.) The Supreme Court held the Fourth Amendment was not offended by warrants issued to search premises the owner or possessor of which was not suspected of any criminal involvement. (*Id.* at pp. 560-563 [56 L.Ed.2d at pp. 538-540].) The Supreme Court also rejected an argument First Amendment concerns justified a "nearly per se rule forbidding the search warrant and permitting only the subpoena duces tecum" of newspaper offices, in particular. (*Id.* at p. 563

[56 L.Ed.2d at p. 540].) The Supreme Court reasoned "[p]roperly administered, the preconditions for a warrant—probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness—should afford sufficient protection against the harms that are assertedly threatened by warrants for searching newspaper offices." (*Id.* at p. 565 [56 L.Ed.2d at pp. 541-542].)

In response to the *Zurcher* decision, the California Legislature in 1978 amended section 1524 to provide "No warrant shall issue for any item or items" covered by the newsmen's privilege, that is, "unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public" or the source of that information. (§ 1524, subd. (g); Stats. 1978, ch. 1054, § 1, p. 3254; Evid. Code, § 1070, subd. (a); see also Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 1609 (1979-1980 Reg. Sess.) as introduced.) The 1978 amendment protected privileged information from seizure and disclosure pursuant to a search warrant; it did not cover searches of other offices which might also contain privileged material, such as the offices of doctors, lawyers, psychotherapists and clergymen.

In 1979, Assemblyman Levine proposed Assembly Bill No. 1609 to again amend section 1524. The original version of the bill essentially adopted the approach taken by the District Court in *Zurcher* which had been rejected by the Supreme Court. As originally introduced, the bill required serving a person not suspected of criminal activity with a subpoena duces tecum for the items sought and provided only if the person failed to produce the items or move to quash the subpoena within 15 days could a search warrant issue. The bill included an exception to the subpoena duces tecum process when an affidavit established probable cause to believe the items would be destroyed prior to serving the subpoena or that the person would leave the jurisdiction. (See Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 1609 (1979-1980 Reg. Sess.) as introduced; Assem. File Analysis of the Assem. Office of Research, 3d Reading File, Assem. Bill No. 1609 (1979-1980 Reg. Sess.).)

In response to opposition from district attorneys and law enforcement officials, Assembly Bill No. 1609 was amended to reflect the current provisions of section 1524. (See Governor's Office, Dept. of Legal Affairs, Enrolled Bill Rep. for Assem. Bill No. 1609 (1979-1980 Reg. Sess.) Sept. 20, 1979; Letter from Assemblyman Mel Levine to Les Halcomb, Com. on Cal. State Gov. (Sept. 4, 1979) [State Archives].) The Legislature deleted the

requirement of the service of a prior subpoena duces tecum and substituted use of a special master for searches of four designated professionals with existing statutory privileges (doctors, lawyers, psychotherapists and clergymen).[6]

Thus, the legislative history shows the *Zurcher* decision which allowed searches of offices containing privileged information prompted both the 1978 and 1979 amendments to section 1524. The evident legislative intent was to limit searches for potentially privileged material in the offices of certain professionals holding defined statutory privileges. In the case of newspaper offices, the Legislature prohibited any search warrants for privileged information (unpublished notes or sources) while, with regard to other professional privileges, the Legislature in 1979 adopted the special master and hearing provisions. The Legislature considered and rejected provisions which would have imposed procedural requirements of a prior subpoena duces tecum for *all* persons not suspected of criminal activity whose offices might contain privileged information. Instead, the Legislature adopted a limited special master procedure applicable only to the offices of lawyers, doctors, psychotherapists and clergymen, and not generally applicable to any office which might contain privileged material.

■ The language of the statute and the legislative history make it plain the Legislature did not intend the special master procedure to be used in any and every office where privileged matter might be found; the special master procedure is limited to the offices of four professions: lawyers, doctors, psychotherapists and clergymen. Because the search here was not of one of those offices, but of the offices of an environmental consultant, the trial court was correct in ruling the search here was not invalid due to the failure to use the special master procedure contained in section 1524.

---

[6]At the same time the Legislature amended section 1524 in 1979, they also amended Evidence Code section 915. Prior to its amendment, Evidence Code section 915 provided, ". . . the presiding officer may not require disclosure of information claimed to be privileged under this division in order to rule on the claim of privilege" unless the court was ruling on a claim involving official information and the identity of an informer or on trade secret and could not make a ruling without disclosure, in which case the court could hold an in camera hearing. In 1979, the Legislature amended Evidence Code section 915 to provide the presiding officer could not require the disclosure of information claimed to be privileged in order to make a ruling; "provided, however, that in any hearing conducted pursuant to subdivision (c) of Section 1524 of the Penal Code [the special master provisions] in which a claim of privilege is made and the court determines that there is no other feasible means to rule on the validity of such claim other than to require disclosure, the court shall proceed in accordance with subdivision (b)," i.e., hold an in camera hearing. (Evid. Code, § 915, subd. (a); Stats. 1979, ch. 1034, § 1, p. 3572.)

## II

### *Attorney-client Privilege and Work Product*

Although we have concluded the special master and hearing procedures of section 1524 do not apply because the search was not of the offices of one of the four professions listed in section 1524, it does not follow that the execution of the search warrant was beyond the court's control.

 The District Attorney assumes that if section 1524 does not apply, then the allegedly privileged documents and work product lose their protection and are freely discoverable. Whether the documents here are privileged, however, does not depend on section 1524 but on whether, pursuant to Evidence Code section 950 et seq., there has been confidential communication between attorney and client which has not been disclosed. It is true that once documents are disclosed, the privilege is waived (Evid. Code, §§ 912, 952) but the question here is whether a court can control disclosure of allegedly privileged documents which have been seized pursuant to a search warrant.

Initially, we note both the Legislature and the courts have determined the attorney-client and work product privileges are fundamental to the justice system. They have guarded against loss of the privileges through unnecessary disclosure. The Legislature has enacted statutes specifically recognizing and enforcing the attorney-client and work product privileges by limiting the disclosure of such information before or during trial. (See Evid. Code, § 950 et seq. [attorney-client privilege],[7] Code Civ. Proc., § 2018 [attorney's work product].)[8] Additionally, the People, through the initiative process, while expanding the permissible discovery in criminal cases by the prosecution, have limited discovery of materials covered by the attorney-client and work product privileges. (§ 1054.6.)

The courts have been sensitive to these privileges. As to the attorney-client privilege our Supreme Court has stated:

---

[7]See also *Lohman* v. *Superior Court* (1978) 81 Cal.App.3d 90, 96 [146 Cal.Rptr. 171], where the court, examining the attorney-client privilege, stated: "[A]s a matter of public policy, the Legislature declared that certain *relationships* are of such nature that they must be sedulously fostered. The means for achieving that end was the creation of a privilege against disclosure of the contents of such confidential communications as passed between the parties to the relationship during its course even as against the manifest imperative of fair adjudication by disclosure of all relevant evidence."

[8]In Code of Civil Procedure section 2018, subdivision (a), the Legislature has declared: "It is the policy of the state to: (1) preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases, and (2) to prevent attorneys from taking undue advantage of their adversary's industry and efforts."

"The attorney-client privilege has been a hallmark of Anglo-American jurisprudence for almost 400 years. [Citations.] The privilege authorizes a client to refuse to disclose, and to prevent others from disclosing, confidential communications between attorney and client. (Evid. Code, § 950 et seq.) Clearly, the fundamental purpose behind the privilege is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters. [Citation.] In other words, the public policy fostered by the privilege seeks to insure 'the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense.' [Citation.]

"Although exercise of the privilege may occasionally result in the suppression of relevant evidence, the Legislature of this state has determined that these concerns are outweighed by the importance of preserving confidentiality in the attorney-client relationship. As this court has stated: 'The privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence.' [Citations.]

". . . While it is perhaps somewhat of a hyperbole to refer to the attorney-client privilege as 'sacred,' it is clearly one which our judicial system has carefully safeguarded with only a few specific exceptions." (*Mitchell* v. *Superior Court* (1984) 37 Cal.3d 591, 599-600 [208 Cal.Rptr. 886, 691 P.2d 642], fns. omitted.)

■ The United States Supreme Court recognized the work product doctrine in *Hickman* v. *Taylor* (1947) 329 U.S. 495 [91 L.Ed. 451, 67 S.Ct. 385] and established "a qualified privilege for certain materials prepared by an attorney 'acting for his client in anticipation of litigation.' [Citation.]" (*Hobbs* v. *Municipal Court* (1991) 233 Cal.App.3d 670, 691 [284 Cal.Rptr. 655].) The *Hickman* court explained: "Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of

course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case [citation] as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." (*Hickman* v. *Taylor, supra,* 329 U.S. at pp. 510-511 [91 L.Ed.2d at p. 462].)

Thus, the Legislature, electorate and courts have held both the attorney-client and work-product privileges in high regard and recognized there are important public policies underlying the privileges which require they be safeguarded.

 Here, we note the search was not a typical search for evidence and the fruits of criminal activity. Nor was it a search limited to the ongoing investigation of possible wrongdoing. Rather, it appears to be a search designed, at least in part, to penetrate the defense theories of the case by obtaining communications among possible defendants, their attorneys and consultants. Unlike other searches, this search pits a defendant's Sixth Amendment protections against the prosecution's pursuit of a criminal investigation. The District Attorney and his investigators knew the materials they were seeking included privileged documents and work product. They invoked the power of the court to seize the documents in question; the items were seized pursuant to a search warrant.

 The purpose of the constitutional requirement of a search warrant is to interpose a magistrate between the police and the person who is the subject of the search. Review by a magistrate provides "an informed and deliberate review of the circumstances by one who is removed from . . . the often competitive enterprise of ferreting out crime." (*People* v. *Escamilla* (1976) 65 Cal.App.3d 558, 562-563 [135 Cal.Rptr. 446], internal quotation marks omitted.) If probable cause to search is established, then the magistrate should issue the warrant and allow the search to proceed. (See, e.g., *Illinois* v. *Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317].)

Here, the court was faced with conflicting responsibilities. On the one hand, the court has a duty under the Fourth Amendment to review search

warrants and determine whether there is probable cause to support seizure of the items. On the other hand, the court has a duty not to undermine the Sixth Amendment right to counsel by allowing the unnecessary disclosure of items seized which might be covered by the attorney-client or work product privileges. It was necessary for the court to devise a mechanism to meet both its responsibility under the Fourth Amendment to issue search warrants as well as its responsibility under the Sixth Amendment to protect the right to counsel by not ordering the disclosure of materials protected by the attorney-client and work product privileges. We believe an appropriate mechanism to accommodate both these interests is an in camera review of materials seized under the search warrant to determine whether the materials are covered by the attorney-client or work product privileges and therefore should not be disclosed to the government.

A number of decisions recognize the court's power to hold in camera hearings to protect privileged materials from disclosure. (See *People* v. *Collins* (1986) 42 Cal.3d 378, 394 [228 Cal.Rptr. 899, 722 P.2d 173] [". . . to require such an offer of proof would infringe on the defendant's privilege against self-incrimination under the California Constitution by compelling him to reveal his defense to the prosecution before trial. To eliminate that risk in cases such as this, the trial court should hear the offer of proof in camera and should seal the record of the hearing for the use of the appellate court."]; *Shleffar* v. *Superior Court* (1986) 178 Cal.App.3d 937, 945, fn. 8 [223 Cal.Rptr. 907] [defendant's privilege against self-incrimination is a basis for in camera hearing]; *Lemelle* v. *Superior Court* (1978) 77 Cal.App.3d 148, 160 [143 Cal.Rptr. 450] [court can conduct in camera review of materials which may be subject to psychotherapist-patient privilege when defendant seeks discovery of materials].)

A majority of the Supreme Court has also interpreted the reciprocal discovery provisions contained in section 1524 et seq. as allowing in camera hearings to prevent disclosure of privileged information. The statutory scheme provides for hearings only based on "good cause" which is defined as "threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement." (*Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356, 382 [285 Cal.Rptr. 231, 815 P.2d 304]; § 1054.7.) The majority concluded the trial court could, "in its discretion, order briefing and argument on a contested issue of privilege, and conduct an in camera hearing where necessary" to prevent disclosure of privileged information because the statutory scheme "empower[ed] the trial court to '. . . enforce the provisions' " and the statutory provisions unequivocally stated the defendant was not

required to disclose privileged materials. (*Izazaga* v. *Superior Court, supra*, 54 Cal.3d at p. 383.)[9]

In a similar vein, the court should be able to control the disclosure of potentially privileged materials sought to be discovered by the prosecution through execution of a search warrant. The attorney-client and work-product privileges should not be lost simply because the prosecution seeks discovery through execution of a search warrant rather than through a discovery motion. The criminal discovery statutes make clear a defendant is not required to disclose privileged materials. The Legislature has made it clear that materials covered by the attorney-client and work-product privileges are not subject to disclosure except in limited circumstances. The courts are charged with safeguarding those privileges.

We further note since the court authorized the search, it had the inherent power to control the execution of that search and thus should have the power to use a mechanism such as an in camera hearing to control the disclosure of privileged materials seized pursuant to a warrant. (See also Code Civ. Proc., § 128, subd. (8), which grants the court power to "control its process and orders so as to make them conform to law and justice.")

 We conclude, based on the court's duty to safeguard disclosure of privileged materials, its power to govern discovery of privileged materials and its power to control its orders so as make them conform to law and justice, the court has the power to seal materials seized pursuant to a search warrant and, upon a claim of privilege, to conduct an in camera review of the allegedly privileged materials.[10] Here, the materials are sealed and the next step is for petitioners to identify and object to the seizure of those documents believed to be protected and to move under section 1539 for the return of those believed to be outside the scope of the warrant.[11]

It will be necessary for the petitioners to have access to the seized materials so that they can catalog and number the documents and determine which, if any, documents are privileged. Accordingly, the court should issue

---

[9]In *Izazaga* v. *Superior Court, supra*, 54 Cal.3d at page 383, the court's discussion related to contesting constitutional privileges, e.g., the privilege against self-incrimination. However, the court's discussion appears to apply equally to a claim based on the attorney-client or work-product privileges since the statutory scheme also states materials covered by those privileges are not discoverable.

[10]It should be noted the District Attorney says it always intended to bring the documents to court and have the court review them.

[11]We note one of the attorneys at oral argument said he had, at that time, been on the case for five weeks and had never seen any of the documents. The trial court should determine, in its discretion, whether access to the materials should be court supervised and whether the documents may be copied and numbered.

an order allowing petitioners access to the documents. If, after examining the documents, petitioners make a motion objecting to the disclosure of certain documents on the basis the documents are covered by the attorney-client or work-product privileges, the court should then hold an in camera hearing to determine the merits of petitioners' claims of privilege as to those documents. The remaining documents should then be released to the District Attorney.

## III

### Search Warrant Affidavit

On November 3, 1993, just hours before the court was scheduled to hear petitioners' request for return of the seized materials, the District Attorney appeared ex parte and the court then ordered the affidavit in support of the search warrants to be sealed. Petitioner has unsuccessfully asked for the affidavit to be unsealed, for the transcript of the November 3 ex parte hearing, for the documents offered by the District Attorney in support of sealing, and for the transcript of a second ex parte in camera hearing on November 5, 1993. The court denied the request to unseal the affidavit, saying that before a criminal complaint is filed, affidavits may be sealed if the District Attorney says disclosure of the information contained in the affidavits would adversely affect a criminal investigation.[12]

■ Petitioner PGS complains the sealing of the affidavit violates section 1534 which provides that after a warrant has been executed "the documents and records shall be open to the public as a judicial record." Petitioner Ormesa argues that if the affidavit is not unsealed their ability to challenge the warrant is eviscerated. Both petitioners suggest the only part of a search warrant which can remain sealed after the warrant is executed is the portion which might reveal the identity of a confidential informant.[13] (*Swanson* v. *Superior Court* (1989) 211 Cal.App.3d 332, 339 [259 Cal.Rptr. 260]; *People* v. *Sanchez* (1972) 24 Cal.App.3d 664, 678 [101 Cal.Rptr. 193]; *People* v. *Greenstreet* (1990) 218 Cal.App.3d 1516, 1519 [267 Cal.Rptr. 377]; Evid. Code, § 1041, subd. (a).) In each of the cases cited, however, charges had already been filed.[14] PGS says there is no postindictment limit in this exception. If there were, the District Attorney would in every case say the affidavit had to be sealed so the investigation would not be compromised. Petitioner points to an Assembly Committee comment which asserts it would

---

[12]Petitioner's motion to strike portions of the declarations of Gale M. Filter and James C. McCarthy is granted.

[13]Here the court noted its decision was not based on any information concerning a confidential informant.

[14]The District Attorney says the affidavit here will be released when the complaint is filed.

be unconscionable to permit the prosecution to invoke privilege if it deprived the defendant of anything material to his or her defense. Again, however, we are dealing with situations where charges have been pressed and not the situation here where the investigation is still underway.

Section 1534 provides that the documents associated with the warrant are public documents 10 days after its execution. Typically after the search, arrests are made. There is no exception in the statute for instances, such as that here, where the search is used to further an ongoing investigation. Such information, however, may be privileged as official information under Evidence Code sections 1040, subdivision (a) and 1042, subdivision (b).

Evidence Code section 1042, subdivision (b) provides that with a warrant which is valid on its face, the District Attorney "bringing a criminal proceeding" need not reveal the informant's identity nor any "official information" to prove the search is legal. We believe "bringing" a criminal proceeding must include pre-arrest investigation. Otherwise the prosecution might feel or be pressured to bring charges without adequate investigation, charges which might later be dismissed because there was insufficient evidence. Subjects of such investigations might be alerted and impede the investigation by tampering with or destroying evidence. The public interest is served when charges are brought only when the appropriate cause has been developed and established. The policy behind the privilege protecting confidential informants obtains whether or not charges have been pressed. Thus, the official information privilege must apply whether or not charges have actually been brought.

If the official information privilege applies to the affidavit in question here, it is a conditional privilege covering information obtained by a public employee and which, if disclosed, is against the public interest. (Evid. Code, § 1040, subds. (a), (b)(2)); see *Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107, 124-126 [130 Cal.Rptr. 257, 550 P.2d 161].)[15] Here there is nothing in the record to suggest that the court undertook the two-stage analysis of confidentiality and public interest necessary to support the sealing of the affidavit. In addition, there is nothing to suggest that the court considered the possibility of redacting the affidavit and sealing only that portion which

---

[15]Petitioners suggest that Evidence Code section 1040, subdivision (b)(2) applies only to the disclosure of surveillance positions. However, the comment by the Assembly Committee on the Judiciary says the judge must weigh the consequences to the public of disclosure and the consequences to the litigant of nondisclosure, a procedure which is not limited to surveillance.

might be found, under the two-prong test above, to be official information. (See *People* v. *Seibel* (1990) 219 Cal.App.3d 1279 [269 Cal.Rptr. 313].) Since the District Attorney here said there was only one sentence he did not want disclosed it appears that even if the sealing of the affidavit were proper, sealing the entire affidavit may have been overbroad.[16]

The District Attorney suggests the doctrine of separation of powers precludes the court from interfering in its investigation by disclosing information in the affidavit. However, the court is not dictating the course of the investigation. The court is employing its inherent power to control the proceedings associated with its issuance of a search warrant as reflected in Evidence Code sections 1040 and 1042. In so doing it is applying the law to actions which the prosecution elected to take in pursuing their investigation. The People know that if certain procedures are employed the resulting evidence may be subject to disclosure or suppression. It is the People's task to tailor their investigation as necessary to minimize or avoid these repercussions.

As to the question of the affidavit, the case must be remanded to the superior court for a hearing on whether part or all of the information is subject to the official information privilege. In light of the foregoing the motion to transmit sealed documents to this court is denied without prejudice to renewal should review of the trial court's subsequent order be sought.

### DISPOSITION

Let a writ of mandate issue directing the Superior Court of the County of Imperial to issue an order allowing petitioners access to the documents seized pursuant to the search warrant so that they may catalog and copy the documents. Should petitioners make a motion objecting to the disclosure of documents based on a claim of privilege, the court shall hold an in camera hearing to determine the merits of petitioners' claims. Any documents which the court determines are privileged should be returned to petitioners. The remaining documents to which no objections have been made or which the court determines are not privileged should be released to the District Attorney. The affidavit in support of the search warrant is to remain sealed until the court has held a hearing and determined whether the official information privilege applies and, if so, whether redacting the affidavit is appropriate. In

---

[16]Government Code section 6255, the catchall exception to the California Public Records Act, does not apply as it does not affect discovery in a criminal case. (Gov. Code, § 6260.)

all other respects the petition is denied. The stay issued by this court on November 24, 1993, is vacated upon issuance of the remittitur.

Huffman, J., and Froehlich, J., concurred.

A petition for a rehearing was denied July 13, 1994.