*1549
 
 Opinion
 

 VOGEL (Miriam A.), J.
 

 When a warrant is sought for the search of the office of a lawyer who is not the target of a criminal investigation, a special master must be appointed to accompany the person who serves the warrant. At the scene of the search, the special master must tell the attorney what he is looking for, and advise the attorney of his right to voluntarily relinquish the items requested. If the attorney declines, the special master then conducts the search within the areas permitted by the warrant, and seizes the authorized items. If the attorney tells the special master that a seized item should not be disclosed, that item must be sealed by the special master “and taken to court for a hearing.” (Pen. Code, § 1524, subd. (c).)
 
 [1]
 
 The hearing, at which the attorney is entitled to raise any claim of privilege and to request the return of the property, “shall be held in the superior court. The court shall provide sufficient time for the parties to obtain counsel and make any motions or present any evidence.
 
 The hearing shall be held within three days of the service of the warrant
 
 unless the court makes a finding that the expedited hearing is impracticable. In that case the matter shall be heard at the earliest possible time.”
 
 (Ibid.,
 
 italics added.)
 

 In this writ proceeding, we hold that, at the time the attorney requests nondisclosure of any seized item, the special master must advise the attorney and the party serving the warrant of the date, time and place of the hearing required by subdivision (c) of section 1524. We also hold that, until a hearing is held to determine whether the sealed documents contain privileged materials or infringe upon the privacy rights of nontargeted third parties, the documents must remain sealed.
 

 Facts
 

 On March 15, 1996, at the request of the California Department of Insurance, a magistrate issued a warrant authorizing the search of the law offices of Walter L. Gordon III for documents pertaining to three named individuals (Johnny Hamilton, Bernadette Palmer and Nathan Tapper). As required by subdivision (c) of section 1524, a special master was appointed and was present on March 19 when the warrant was executed. Among other things, a check register and canceled checks were seized. Of the 326 checks, one had been issued to Johnny Hamilton, none to the other named individuals (so that 99% percent of the seized check records were irrelevant to the investigation). At Gordon’s request, the special master sealed the checks, check stubs and other items. Three days came and went but no hearing was requested by anyone.
 

 
 *1550
 
 Ten days after the search (on March 29), an investigator from the Department of Insurance appeared in the courtroom of the judge who had issued the warrant, where he presented a written application explaining that the warrant had been executed on March 19 and that no hearing had been requested by Gordon within the three days provided by subdivision (c) of section 1524, and requesting an order unsealing all of the items seized in the search. Although no notice of this application had been given to Gordon, the court granted it on the same day it was presented and Gordon’s records were turned over to the Department of Insurance.
 

 About eight months later, when Gordon first learned that his records had been unsealed, he immediately filed a motion for the return of his records, an order unsealing the affidavit supporting the search warrant, and a finding that his records had been “unlawfully unsealed.” In a supporting declaration, Gordon explained that the canceled checks and his check register constituted “confidential payout information on numerous clients over a number of years,” none of whom were involved in the investigation initiated by the Department of Insurance.
 
 [2]
 

 The District Attorney’s office filed written opposition to Gordon’s motion, objecting to disclosure of the affidavit supporting the warrant (confidential informants had provided information) but basically ignoring Gordon’s request for the return of his records. At the hearing held on Gordon’s motion (before a judge other than the one who issued the warrant), Gordon objected to the Department of Insurance’s failure to notify him before it asked the court to unseal the records (and to the court’s willingness to do so without notice to Gordon). At the conclusion of the hearing, the court ruled that the records were not unlawfully unsealed because the statute is unclear on the issue of notice, that it was Gordon’s burden to request a hearing within three days after the warrant was executed and that, by his failure to do so, he waived whatever right he might have had to object to the Department of Insurance’s failure to notify him when it later requested the order unsealing the seized records. The court denied Gordon’s motion (but did order the prosecutor to give Gordon copies of his checks).
 

 Gordon then filed a petition for a writ of mandate, asking us to hold that the burden to request a hearing was not his and to find that the order unsealing his records was “unlawful.” In response to our order to show
 
 *1551
 
 cause, the District Attorney contends the seized records are not privileged and that, therefore, there was no harm to anyone when they were unsealed. Both sides miss the main point.
 

 Discussion
 

 I.
 
 Background
 

 In 1978, the United States Supreme Court held that the Fourth Amendment does not “prohibit the States from issuing warrants to search for evidence simply because the owner or possessor of the place to be searched is not then reasonably suspected of criminal involvement.”
 
 (Zurcher
 
 v.
 
 Stanford Daily
 
 (1978) 436 U.S. 547, 560 [98 S.Ct. 1970, 1978, 56 L.Ed.2d 525] [search of a college newspaper].) Later the same year, the California Legislature amended section 1524 (which since 1872 has listed the grounds for issuance of a search warrant) to prohibit the issuance of warrants for any item described in Evidence Code section 1070 (news sources). (Stats. 1978, ch. 1054, § 1, p. 3255.)
 

 The following year (in March 1979), the Attorney General of the State of California obtained a warrant for the search of a law firm’s offices in connection with a major Medi-Cal fraud investigation. While three agents from the Attorney General’s office executed the warrant and spent several hours searching the law firm’s records for a nine-page list of documents, the law firm applied for and obtained a temporary restraining order (followed three weeks later by a preliminary injunction) that prohibited the search authorized by the warrant.
 
 (Deukmejian
 
 v.
 
 Superior Court
 
 (1980) 103 Cal.App.3d 253, 254-256 [162 Cal.Rptr. 857].) Faced with the trial court’s legitimate concerns about the privacy rights of the law firm and its non-targeted clients and the equally legitimate need for the Attorney General to go forward with his search subject to reasonable limitations, Division Three of our court issued an alternative writ suggesting “a compromise solution which called for cooperation among the trial court, the [Attorney General] and [the law firm].”
 
 (Id.
 
 at p. 258.)
 

 In response (and with the encouragement of many professional organizations), the Legislature amended section 1524 (effective January 1, 1980) to require the appointment of a special master when a warrant issues for a search for evidence in the possession of lawyers, physicians, psychotherapists and clergymen who are not themselves suspected of criminal activity.
 
 (Deukmejian
 
 v.
 
 Superior Court, supra,
 
 103 Cal.App.3d at pp. 258-259; Stats.
 
 *1552
 
 1979, ch. 1034, § 2, p. 3573.) Although there have been subsequent amendments to section 1524, none of them have affected the basic provisions with which we are concerned in this case.
 
 [3]
 

 II.
 
 The Statute
 

 As relevant (that is, omitting the grounds for issuance of a warrant), section 1524 provides as follows:
 

 “(c) [N]o search warrant shall issue for any documentary evidence in the possession or under the control of any person, who is a lawyer as defined in Section 950 of the Evidence Code, a physician as defined in Section 990 of the Evidence Code, a psychotherapist as defined in Section 1010 of the Evidence Code, or a clergyman as defined in Section 1030 of the Evidence Code, and who is not reasonably suspected of engaging or having engaged in criminal activity related to the documentary evidence for which a warrant is requested unless the following procedure has been complied with:
 

 “(1) At the time of the issuance of the warrant the court shall appoint a special master in accordance with subdivision (d) to accompany the person who will serve the warrant. Upon service of the warrant, the special master shall inform the party served of the specific items being sought and that the party shall have the opportunity to provide the items requested. If the party, in the judgment of the special master, fails to provide the items requested, the special master shall conduct a search for the items in the areas indicated in the search warrant.
 

 “(2) If the party who has been served states that an item or items should not be disclosed,
 
 they shall be sealed by the special master and taken to court for a hearing.
 

 “At the hearing the party searched shall be entitled to raise any issues that may be raised pursuant to Section 1538.5 as well as a claim that the item or items are privileged, as provided by law. The hearing shall be held in the superior court. The court shall provide sufficient time for the parties to obtain counsel and make any motions or present any evidence. The hearing shall be held within three days of the service of the warrant unless the court makes a finding that the expedited hearing is impracticable. In that case the matter shall be heard at the earliest possible time.
 

 “(3) The warrant shall, whenever practicable, be served during normal business hours. In addition, the warrant shall be served upon a party who
 
 *1553
 
 appears to have possession or control of the items sought.
 
 If after reasonable efforts, the party serving the warrant is unable to locate the person, the special master shall seal and return to the court for determination by the court any item that appears to be privileged as provided by law.
 

 “(d) As used in this section, a ‘special master’ is an attorney who is a member in good standing of the California State Bar and who has been selected from a list of qualified attorneys that is maintained by the State Bar particularly for the purposes of conducting the searches described in this section. These attorneys shall serve without compensation. A special master shall be considered a public employee, and the governmental entity that caused the search warrant to be issued shall be considered the employer of the special master and the applicable public entity, for purposes of Division 3.6 (commencing with Section 810) of Title 1 of the Government Code, relating to claims and actions against public entities and public employees. In selecting the special master the court shall make every reasonable effort to ensure that the person selected has no relationship with any of the parties involved in the pending matter.
 
 Any information obtained by the special master shall be confidential and shall not be divulged except in direct response to inquiry by the court.
 

 “In any case in which the magistrate determines that, after reasonable efforts have been made to obtain a special master, a special master is not available and would not be available within a reasonable period of time, the magistrate may direct the party seeking the order to conduct the search in the manner described in this section in lieu of the special master.
 

 “(e) Any search conducted pursuant to this section by a special master may be conducted in such a manner as to permit the party serving the warrant or his or her designee to accompany the special master as he or she conducts his or her search.
 
 However, that party or his or her designee shall not participate in the search nor shall he or she examine any of the items being searched by the special master except upon agreement of the party upon whom the warrant has been served.
 

 “(f) As used in this section, ‘documentary evidence’ includes, but is not limited to, writings, documents, blueprints, drawings, photographs, computer printouts, microfilms, X-rays, files, diagrams, ledgers, books, tapes, audio and video recordings, films or papers of any type or description.
 

 “(g) No warrant shall issue for any item or items described in Section 1070 of the Evidence Code.” (Italics added.)
 

 III.
 
 Notice
 

 However unclear the statute may be on the issue of notice, we hold that documents sealed by the special master cannot be (1) unsealed and
 
 *1554
 
 turned over to the investigating agency (or to the prosecutor) without notice to the person from whom they were seized (that is, the attorney, physician, psychotherapist or clergyman) or (2) returned to the person from whom they were seized without notice to the person executing the warrant (or, alternatively, to the investigating agency or the prosecutor).
 

 Although there are exceptions to every rule, notice is not a technicality honored more by its breach than its observance.
 
 (McDonald
 
 v.
 
 Severy
 
 (1936) 6 Cal.2d 629, 631 [59 P.2d 98] [the general rule is that notice must be given whenever the order sought may affect the rights of an adverse party].) Since the hearing required by subdivision (c) of section 1524 is conducted after the search has been completed and at a time when the seized documents are in the possession of the special master or the court, there is no reason
 
 not
 
 to give notice. (See
 
 Oziel
 
 v.
 
 Superior Court
 
 (1990) 223 Cal.App.3d 1284, 1292-1294 [273 Cal.Rptr. 196] [property seized under a warrant is held on behalf of the court, and possession by the seizing officer is possession by the court]; compare
 
 Sea Rail Truckloads, Inc.
 
 v.
 
 Pullman, Inc.
 
 (1982) 131 Cal.App.3d 511, 514-515 [182 Cal.Rptr. 560] [writ of possession may issue without notice where there is imminent danger that property will be destroyed]; see also Code Civ. Proc., § 512.020, subd. (b)(3).)
 

 Moreover, notice in these cases is not just a matter of abstract due process. It must be given to the attorney so he can protect his own rights of privacy and the privacy and privilege rights of his clients. It must be given to the investigating agency so that it can protect the integrity of its investigation and attempt to avoid any delay beyond the statutory three-day period.
 
 (Deukmejian
 
 v.
 
 Superior Court, supra,
 
 103 Cal.App.3d at pp. 254-256.) As we will explain, section 1524 was enacted to protect not only lawyers, physicians, psychotherapists and clergymen, but also the privacy rights of their clients, patients and penitents who are not the subject of the investigation leading to the issuance of the search warrant. Before those rights can be adversely affected, notice must be given.
 
 [4]
 

 A.
 

 When the original version of subdivision (c) of section 1524 was enacted in 1979, the Legislature’s concern was that the “use of search warrants in a
 
 *1555
 
 lawyer’s office is particularly subject to abuse, since a law enforcement agency searching under a warrant for files relating to defendant ‘A’ could come across and copy files relating to defendant ‘B’ in whom they were also interested.” (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 1609, as amended May 17, 1979, p. 5.) Indeed, “[a] portion of the support for this bill developed as a result of some searches that [could] be best characterized as fishing expeditions by law enforcement officials.” (Enrolled Bill Rep. to the Governor’s Office, Assem. Bill No. 1609, Sept. 20, 1979, p. 2.) Thus, “[t]he purpose of the bill [was] to protect the privacy of privileged communications and of other records of persons not suspected of criminal activities.” (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 1609, as amended Aug. 20, 1979, p. 2.)
 

 Quite clearly, the Legislature adopted the special master procedure for lawyers, physicians, psychiatrists and clergymen because these professionals are the ones most likely to be in possession of confidential information pertaining not only to the persons under investigation for criminal activity, but also pertaining to other, nontargeted clients, patients and penitents.
 
 (PSC Geothermal Services Co.
 
 v.
 
 Superior Court
 
 (1994) 25 Cal.App.4th 1697, 1707 [31 Cal.Rptr.2d 213] [the evident legislative intent was to limit searches for potentially privileged material in the offices of certain professionals holding defined statutory privileges];
 
 People
 
 v.
 
 Superior Court (Bauman & Rose)
 
 (1995) 37 Cal.App.4th 1757, 1766-1769 [44 Cal.Rptr.2d 734]; and see 28 C.F.R. § 59.1 et seq. (1996) [the federal guidelines for obtaining documentary materials held by third parties, including but not limited to lawyers, physicians and clergymen].)
 
 [5]
 
 Long-standing public policies protect the privacy and confidentiality of these relationships (Evid. Code, §§ 917, 954, 994, 1014, 1033, 1034; 2 Witkin, Cal. Evidence (3d ed. 1986) Witnesses, § 1068, p. 1012;
 
 People
 
 v.
 
 Kor
 
 (1954) 129 Cal.App.2d 436, 447 [277 P.2d 94] (cone. opn. of Shinn, J.);
 
 McRae
 
 v.
 
 Erickson
 
 (1905) 1 Cal.App. 326, 331-332 [82 P. 209]), and the enactment of subdivision (c) of section 1524 shows the Legislature’s careful and deliberate balancing of the sanctity of those relationships against law enforcement’s right to search the offices of lawyers, physicians, psychotherapists and clergymen when the grounds for issuance of a warrant exist. Conversely, there is
 
 nothing
 
 in section 1524 or its history to suggest a legislative intent to permit the disclosure of information in the manner it occurred in the case now before us.
 
 (PSC Geothermal Services Co.
 
 v.
 
 Superior Court, supra,
 
 25 Cal.App.4th at p. 1702 [in construing a statute, our task is to determine and give effect to the Legislature’s intent].)
 

 
 *1556
 
 B.
 

 Of the 326 canceled checks and check stubs seized from Gordon’s office, only one check was payable to someone named in the warrant. What this means is that over 99 percent of the seized documents had nothing whatsoever to do with the Department of Insurance’s investigation. According to Gordon, those documents “consist of confidential payout information on numerous clients over a number of years.” Our concern is for the rights of those clients.
 

 The District Attorney contends the checks are not privileged. He says “no harm, no foul,” and relies on
 
 United States
 
 v.
 
 Miller
 
 (1976) 425 U.S. 435 [96 S.Ct. 1619, 48 L.Ed.2d 71], where the court held there was no reasonable expectation of privacy in checks that were voluntarily conveyed to a bank in the ordinary course of business.
 
 (Id.
 
 at p. 442 [96 S.Ct. at p. 1623].) The District Attorney concedes there is California law to the contrary
 
 (Burrows
 
 v.
 
 Superior Court
 
 (1974) 13 Cal.3d 238, 243 [118 Cal.Rptr. 166, 529 P.2d 590]), but insists that federal constitutional standards must now be applied. (See Cal. Const., art. I, § 28 [Prop. 8];
 
 People
 
 v.
 
 Huston
 
 (1989) 210 Cal.App.3d 192, 222 [258 Cal.Rptr. 393].) Implicit in the District Attorney’s argument is the assumption that we are dealing with a criminal case. He is mistaken.
 

 With the possible exception of Charles Smith (fn. 2,
 
 ante),
 
 Gordon’s clients were not targeted by the criminal investigation that resulted in the issuance of the warrant for the search of Gordon’s office. Insofar as we know (and insofar as it is relevant to this proceeding), there are no criminal charges pending against Gordon or his clients. The fact that Gordon’s records were seized as part of a criminal investigation of others does not mean Gordon can be treated as a criminal. Indeed, the special master provisions of subdivision (c) of section 1524 apply only where the attorney is “not reasonably suspected” of any criminal activity. Accordingly, Proposition 8 has nothing to do with the price of tomatoes.
 
 [6]
 
 For the same reason,
 
 Burrows
 
 v.
 
 Superior Court, supra,
 
 13 Cal.3d 238, a criminal case, is inapposite. The only issues here are the attorney-client privilege and the clients’ rights of privacy.
 

 
 *1557
 
 As to the attorney-client privilege, a client—whether or not he is a party to a particular proceeding—has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication to or from the lawyer—and it is the lawyer’s duty to claim the privilege on his client’s behalf whenever necessary to prevent an unauthorized disclosure. (Evid. Code, §§ 954, 955.) Assuming the requisite relationship and confidential communication, the privilege is absolute and disclosure may not be ordered, without regard to relevance, necessity or any particular circumstances peculiar to the case.
 
 (Shannon
 
 v.
 
 Superior Court
 
 (1990) 217 Cal.App.3d 986, 995 [266 Cal.Rptr. 242].) The term “confidential communication” is broadly construed, and communications between a lawyer and his client are presumed confidential, with the burden on the party seeking disclosure to show otherwise. (Evid. Code, § 917;
 
 Estate of Kime
 
 (1983) 144 Cal.App.3d 246, 256 [193 Cal.Rptr. 718].)
 

 Of course, some communications are not “confidential” and it may be that business checks payable to a client or others on the client’s behalf are not privileged. (Evid. Code, § 952; and see
 
 People
 
 v.
 
 Chapman
 
 (1984) 36 Cal.3d 98, 110 [201 Cal.Rptr. 628, 679 P.2d 62]; see also
 
 Baird
 
 v.
 
 Koerner
 
 (9th Cir. 1960) 279 F.2d 623 [95 A.L.R.2d 303]) Assuming without deciding that Gordon’s canceled checks are not privileged documents, the check stubs may be privileged if the attorney has used them for recording privileged information.
 
 (People
 
 v.
 
 Meredith
 
 (1981) 29 Cal.3d 682, 693 [175 Cal.Rptr. 612, 631 P.2d 46].) By unsealing these records and turning them over to the Department of Insurance without affording Gordon an opportunity to assert the privilege on his clients’ behalf, the court may have caused the disclosure of privileged information.
 

 Independent of the privilege, there is the issue of privacy guaranteed by the California Constitution (Cal. Const., art. I, § 1). As our Supreme Court explained in
 
 Valley Bank of Nevada
 
 v.
 
 Superior Court
 
 (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977], “the right of privacy extends to one’s confidential financial affairs as well as to the details of one’s personal life.” While this right is not absolute and must be balanced against other considerations, the constitutional elevation of privacy to an “ ‘inalienable right’ expressly protected by force of constitutional mandate” compels a finding of relevancy before confidential financial information may be disclosed.
 
 (Ibid.)
 
 In the context of our case, therefore, Gordon’s clients have a right of privacy in their financial affairs, and the records of those affairs should not have been disclosed to the Department of Insurance
 
 *1558
 
 without notice to Gordon and a showing of relevance and good cause to invade the privacy of uninvolved clients.
 
 (Geilim
 
 v.
 
 Superior Court
 
 (1991) 234 Cal.App.3d 166, 172, 174 [285 Cal.Rptr. 602] [the special master provisions of section 1524 would be meaningless if the trial court could order disclosure without examination of the sealed items in the presence of the person from whom they were seized].)
 

 IV.
 
 The Hearing
 

 The statute is clear that where, as here, the attorney states to the special master that the items seized should not be disclosed, those items must be sealed “and taken to court for a hearing.” (§ 1524, subd. (c)(2).) It is equally clear that, absent a finding of impracticability, the “hearing shall be held within three days of the service of the warrant.”
 
 (Ibid.)
 
 Although the statute does not identify the person entitled or obligated to request the hearing, we reach the only logical conclusion—that the special master must set the hearing.
 

 First, the selection of the special master for this task follows naturally from the language of the statute, which provides that, upon a request for nondisclosure, the seized records “shall be sealed by the special master and taken to court for a hearing.” (§ 1524, subd. (c)(2).) Common sense suggests that the act of taking the documents to court for a hearing necessarily includes the duty to set that hearing.
 
 (Beaty
 
 v.
 
 Imperial Irrigation Dist.
 
 (1986) 186 Cal.App.3d 897, 902 [231 Cal.Rptr. 128] [a statute must be given a reasonable and common sense interpretation consistent with the apparent purpose of the Legislature, practical rather than technical in nature and which, when applied, will result in wise policy rather than mischief or absurdity].)
 

 Second, the special master is in the best position to determine the appropriate time and place for the hearing. Since the special master must be appointed at the time the warrant issues (§ 1524, subd. (c)(1)), he is involved from the outset and is in the best position to be prepared if a hearing is requested.
 
 [7]
 
 If the warrant is issued by a judge of the municipal court, the issuing magistrate will be able to designate the appropriate department of the
 
 *1559
 
 superior court for the hearing.
 
 [8]
 
 If the warrant is issued by a judge of the superior court, the special master can be advised whether that judge will conduct the hearing or whether it should be set in another department of the superior court. When the warrant is served, the special master can fix the date and time for the hearing within the permitted three-day period, and he can then and there give notice to both interested parties (the attorney whose office is searched and the party executing the warrant). When the sealed items are returned to court, the special master can advise the court of the date and time of the hearing.
 
 [9]
 

 Third, imposition of the burden to obtain a hearing and give notice on either the lawyer whose office is searched or the investigating agency would accomplish nothing. As we have explained (Part III.,
 
 ante),
 
 subdivision (c) of section 1524 protects the privilege and privacy rights of nontargeted third parties as well as the rights of the person whose office is searched. It is for this reason that the procedure adopted by the trial court in our case— disclosure without notice to Gordon because Gordon had failed to request a hearing—cannot be condoned. Imposition of the burden to request a hearing on the person whose office is searched does not address the problem that arises where he fails to meet that burden. For example, Gordon’s failure to request a hearing might have waived his own rights if he had any to assert but his inaction could not operate as a waiver of privileges held by his clients or of his clients’ rights of privacy. What should have happened is that the agent from the Department of Insurance should have given notice to Gordon before going into court to request an order unsealing Gordon’s records, and the court should have held a hearing to consider the privacy and privilege issues.
 
 (Geilim
 
 v.
 
 Superior Court, supra,
 
 234 Cal.App.3d at p. 176 [a trial court must hold a hearing and render a ruling regarding the status of claimed privileges before it orders disclosure of documents sealed by a special master];
 
 People
 
 v.
 
 Superior Court (Bauman & Rose), supra,
 
 37 Cal.App.4th at p. 1771.) It would have been equally wrong for the court to return Gordon’s documents to him without notice to the Department of Insurance or the District Attorney’s office.
 

 In short, the privilege issues preclude the assignment to either party of the burden to set a hearing, and leave the special master as the only logical choice.
 

 
 *1560
 
 V.
 
 Conclusion
 

 To summarize: When records seized from the office of an attorney, physician, psychotherapist or clergyman are sealed by the special master at the request of the person whose office is searched, it is the special master’s obligation to set a hearing in the superior court within the three days permitted by section 1524, subdivision (c)(2) and, at the time nondisclosure is requested, it is the special master’s obligation to give notice of the date, time and place of that hearing to the person whose office is searched and to the person executing the warrant. If for any reason the required notice is not given, the records cannot be unsealed or returned until notice
 
 is
 
 given and a hearing is held in superior court, and until all colorable claims of privilege and privacy are decided by the court.
 
 [10]
 

 (PSC Geothermal Services Co.
 
 v.
 
 Superior Court, supra,
 
 25 Cal.App.4th at p. 1712 [even where the special master provisions of section 1524 do not apply, the court has a “duty to safeguard disclosure of privileged materials” and, to ensure that its orders conform to law and justice, “the power to seal materials seized pursuant to a search warrant and, upon a claim of privilege, to conduct an in camera review of the allegedly privileged materials”].)
 

 Disposition
 

 Let a peremptory writ of mandate issue commanding the superior court to vacate its order denying Gordon’s motion for the return of his records, and directing the court to conduct such further hearings as may be necessary to determine the privilege and privacy rights of Gordon’s clients. Gordon is entitled to recover his costs of these writ proceedings.
 

 Ortega, Acting P. J., and Masterson, J., concurred.
 

 A petition for a rehearing was denied July 15, 1997.
 

 [1]
 

 Unless otherwise stated, all section references are to the Penal Code. As will appear, the same statute applies to physicians, psychotherapists and clergymen. (§ 1524, subd. (c).)
 

 [2]
 

 The motion was filed with a caption and text showing Gordon and “Charles Smith” as the petitioners, the Department of Insurance, the Department’s investigator, and the People of the State of California as respondents, in a case apparently filed by Gordon for the specific purpose of filing his motion for the return of his property. We know that “Charles Smith” was not one of the individuals named in the search warrant, but we do not know if criminal charges were ever filed against him.
 

 [3]
 

 The amendments were in 1982 and 1996. (Stats. 1982, ch. 438, § 1, p. 1806 [the special master shall be considered a public employee]; Stats. 1996, ch. 1078, § 2 [technical changes]; Stats. 1996, ch. 1079, § 11 [technical changes].)
 

 [4]
 

 The hearing that must be held within three days is not limited to privilege and privacy issues. Subdivision (c)(2) of section 1524 provides that “the party searched” is entitled to raise at that hearing any issues “that may be raised pursuant to Section 1538.5 as well as a claim that the item or items are privileged, as provided by law.” In the case before us, no issues have been raised pursuant to section 1538.5 (or section 1539, subdivision (a)), and Gordon has not raised any issues concerning his personal right of privacy or concerning his work product. We therefore do not decide whether a failure to assert those rights at the earliest possible time might result in a waiver. We limit our discussion to the privilege and privacy rights of nontargeted third parties, the only rights at issue in the case before us.
 

 [5]
 

 The State of Oregon provides even greater protection for lawyers by prohibiting any search of a lawyer’s office (with or without a warrant) unless there is probable cause to believe the lawyer is involved in a crime. (Or. Rev. Stat. § 9.695.) For an in-depth discussion of the problem and of solutions adopted in other jurisdictions, see Note,
 
 Law Office Searches: The Assault on Confidentiality and the Adversary System
 
 (1996) 33 Am. Crim. L. Rev. 1251.
 

 [6]
 

 In
 
 People
 
 v.
 
 Superior Court (Memorial Medical
 
 Center) (1991) 234 Cal.App.3d 363, 389 [286 Cal.Rptr. 478], Division Seven of our court held that “a special proceeding under . . . section 1524 is a ‘criminal action’ with regard to the issuance of a search warrant for discovery of the records of a hospital peer review committee . . . .” Because of the special problems incident to peer review committees, we do not believe Division Seven’s conclusion is inconsistent with our conclusion. If it is, we disagree with it and decline to follow it. In
 
 Brillantes
 
 v.
 
 Superior Court
 
 (1996) 51 Cal.App.4th 323 [58 Cal.Rptr.2d 770], a warrant issued for the search of a doctor’s home and office. Because the doctor was the subject of the investigation (he was suspected of Medi-Cal fraud), the special master procedure was not followed. The trial court denied the doctor’s motion to have his patient files sealed (the doctor claimed they were privileged). Division Three of our court agreed with the trial court and held
 
 *1557
 
 that a section 1524 hearing was not required where a physician is suspected of Medi-Cal fraud.
 
 (Brillantes
 
 v.
 
 Superior Court, supra,
 
 51 Cal.App.4th at p. 329.)
 
 Brillantes
 
 is entirely consistent with the conclusions we reach in our case.
 

 [7]
 

 We do not know the percentage of cases in which the special master is asked to seal seized documents, but we suspect the request is made more often than not. In a law office, a specific client file will probably contain privileged information, and more general files (such as the bank records seized in this case) will probably contain information about other, nontargeted clients whose privilege and privacy rights must be protected. We see no practical difference for the offices of physicians, psychotherapists or clergymen.
 

 [8]
 

 Although the post-search hearing must be held in superior court (§ 1524, subd. (c)(2)), there is nothing in the statute to prevent a judge of the municipal court from issuing a warrant subject to the special master provisions of section 1524.
 

 [9]
 

 We leave it to the trial courts to develop their own rules about where and how the special master is to obtain the information he needs to satisfy his statutory obligation. We strongly recommend, however, that the courts design a form for the special master’s use in giving notice, with blanks to fill in the date, time and place of the hearing.
 

 [10]
 

 Upon a colorable claim of privilege or privacy, the trial court cannot order the documents unsealed until the validity of the claim is determined. If the only means to assess the validity of the claim requires examination of the sealed documents, the trial court must examine them in camera, in the presence of the attorney from whom they were seized but no one else.
 
 (Geilim
 
 v.
 
 Superior Court, supra,
 
 234 Cal.App.3d at p. 174.) “If the judge determines that the information is privileged, neither [the judge] nor any other person may ever disclose, without the consent of a person authorized to permit disclosure, what was disclosed in the course of the proceedings in chambers.” (Evid. Code, § 915, subd. (b).)