[No. B058220. Second Dist., Div. Three. Sept. 20, 1991.]

GILBERT R. GEILIM, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Theodore A. Cohen for Petitioner.

No appearance for Respondent.

Ira Reiner, District Attorney, Arnold T. Guminski and Robert W. Carney, Deputy District Attorneys, for Real Party in Interest.

## Opinion

**HINZ, J.—**

### Introduction

Petitioner Gilbert R. Geilim, attorney at law, for his clients and himself, (Geilim) petitions for writ of mandate/prohibition to restrain and prohibit the superior court from disclosing to the People (unsealing) the items seized pursuant to a search warrant of his law office until after a hearing to determine whether such items or a portion of such items are privileged.

This court denied Geilim's petition. However, the California Supreme Court granted Geilim's petition for review and transferred the matter back to this division. Pursuant to the Supreme Court's directions, we vacated our order denying mandate or prohibition and issued an alternative writ.

The petition for the writ is granted.

### Factual and Proceedural Backround

Property was seized from the law offices of Geilim pursuant to a search warrant issued upon a finding of probable cause supported by affidavit of an Insurance Fraud/Staged Collision Investigator of the California Highway

Patrol (CHP). The search warrant authorized search of Geilim's law offices at 6500 Wilshire Boulevard in Los Angeles and seizure of the following: "1. Evidence of association or employment between the named law office, or its employees, and the persons listed below. This evidence shall include, but not be limited to, employment records, verification of employment or income statements, business cards, address books, telephone records, messages, logs, checks, check stubs, check registers, cancelled checks, cancelled drafts, cash receipt journals, cash, ledger journal entries, bank records, payment records, correspondence or any other document or record which tends to show an association or payment of monies to any person listed below or any other person for the purpose of committing insurance fraud or capping: . . . [¶] 2. Any records, files, briefcases and their contents and other writings or records, which reasonably appear to belong to, or have been created by any of the persons listed above. [¶] 3. Any record or evidence of representation by the above law office, or its employees, and the persons listed below. This evidence shall include, but not be limited to, client retainer agreements, medical reports, accident information, correspondence, medical releases, telephone messages, records of payment, any office records, including but not limited to, phone records, messages, correspondence, diaries, client lists, rolodexes, business cards, or any other document tending to show a relationship or an association between the law offices and the persons listed below: . . . [¶] 4. All electronic storage devices capable of storing electronic data regarding the records listed in items #1 through #3 above, including but not limited to, magnetic tapes and disks (floppy and hard), and the computer hardware necessary to retrieve the electronic data, including but not limited to, the central processing unit (CPU), viewing screen (CRT), disk or tape drive, printer, software and manuals for the operation of the computer, together with all the hand written notes or printed material describing the operation of the computer. [¶] 5. Business cards, letterhead stationary [*sic*], photocopies of documents or records tending to establish the identity of persons in control of the premises. [¶] 6. Any and all client files which reflect traffic accidents involving the following fact pattern: three or more claimants, in a broadside collision, with a single insured who ran a stop sign, or pulled out of a Market, such as Ron's or Ralph's, in the Hollywood area, which resulted in soft-tissue injuries only or which reflect[ed] an association with any of the persons listed in item #1 above. . . ."

Geilim moved for return of the seized property pursuant to Penal Code section 1524[1] on the grounds that the attorney-client and work product privileges applied, that the warrant was overbroad, and that the search was conducted in violation of section 1524. The trial court ordered the hearing on

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

the motion would be held at a later time, but that all items which were sealed pursuant to the "special master" provisions of section 1524 could be unsealed by the People.

In making its ruling, the trial court stated, "When I reviewed the search warrant affidavit in this case, it became abundantly clear to me that there was an abundance of probable cause for the warrant to issue as to each of the parties who were served."

The trial court reviewed the files of one of the parties other than Geilim and found no privilege existed.[2] Apparently based upon that review, the trial court found, ". . . if the materials that are presently under seal without a star[3] contain the same kinds of materials in the files seized from Mr. Moss's office [the ones reviewed], then the attorney-client privilege does not pertain, the work product privilege does not apply. And that goes to all of the documents with the exception—and I'm using this as an example—with the exception of Mr. Moss's personal notes."

Still later, in finding that "at this point" the attorney-client privilege, the work product privilege and the right of privacy of the clients did not apply, the trial judge stated, "I find that what was seized, based upon what I've seen so far, does fall under Evidence Code 956. [¶] I am ordering the unsealing of those files."

After some confusion and discussion over the scope of the ruling, the trial court reiterated: "What I found was—now listen carefully that at this stage, based upon what—everything here that I have read and listening to your argument, that the attorney-client privilege, the work product privilege and the right of privacy of the client suspect does not apply. Now, I'm certainly making [those findings] with respect to the files that were seized which the masters designated fell within the purview of the warrant. [¶] The real issue here is whether or not those items which are, quote, 'sealed' because the master felt that there was some question as to whether or not the files or papers or document, whatever, fell within the purview of the warrant, I'm finding at this time, based upon what I know, that the privileges do not apply and that Evidence Code section 956 does apply. [¶] What I'm doing is, if you please, is giving the District Attorney's office—the prosecutor's office the right to unseal all of the files and allow counsel to make copies of everything that you need. And I am not at this point limiting the prosecution with respect to items which the master was unsure of."[4]

---

[2]The transcript indicates that these records were rather limited.

[3]The starred files were files which were sealed by the special master because he believed they may be outside the purview of the warrant.

[4]Apparently this refers to the starred files.

The trial court granted a week's stay in order to allow the parties to seek a writ. This division denied Geilim's petition. The Supreme Court, in granting Geilim's petition for review, ordered a stay, to remain in effect pending disposition of the case by this court.

## ISSUE

Under Section 1524, subdivision (c), is the trial court required to review all seized property upon a claim of privilege before ordering it unsealed and made available to the prosecutor, no matter the volume of such property?

## DISCUSSION

### 1. *The Requirements of Section 1524*

At the hearing provided by section 1524, subdivision (c)(2), the trial court ordered all records unsealed and disclosed to the prosecutor, but deferred any rulings on section 1538.5 issues to a later date. The critical question raised under these circumstances is whether the unsealing of all seized property, against a claim of attorney-client privilege, is proper in the absence of an examination of the content of the documents? Is the person entitled to claim the privilege sufficiently protected by suppression of the improperly obtained evidence in any trial or other hearing against the movant or holder of the privilege? (§ 1538.5, subd. (d); see *United States* v. *Morrison* (1981) 449 U.S. 361, 366 [66 L.Ed.2d 564, 569, 101 S.Ct. 665].)

In 1979 the Legislature faced the difficult legal questions raised by the use of warrants in the search of attorneys' offices by adoption of subdivision (c) of section 1524. (Stats. 1979, ch. 1034, § 2, p. 3573.)

"In recognition of the valid and sometimes crucial role search warrants serve in the continuing struggle against sophisticated white-collar crime and the basic need to protect privileged material in the possession of attorneys, among others, and by compromising and balancing these strong competing societal interests, the Legislature filled the existing void with procedural protections." (*Deukmejian* v. *Superior Court* (1980) 103 Cal.App.3d 253, 258 [162 Cal.Rptr. 857].)

When the object of a search warrant is documentary evidence in the possession or under the control of a lawyer "who is not reasonably suspected

of engaging or having engaged in criminal activity related to the documentary evidence," certain procedures must be followed. (§ 1524, subd. (c).)[5]

These include the appointment of a "special master"[6] to accompany the person serving the warrant. The special master is to inform the party served of the specific items sought and "that the party shall have the opportunity to provide the items requested." (§ 1524, subd. (c)(1).) If the party fails to provide the items requested, the special master is authorized to conduct the warranted search.[7]

Section 1524, subdivision (c)(2), requires prompt adversarial hearings to determine a claim of privilege. "*If the party who has been served states that an item or items should not be disclosed, they shall be sealed by the special master and taken to court for a hearing.* [¶] At the hearing the party searched shall be entitled to raise any issues which may be raised pursuant to Section 1538.5 as well as a claim that the item or items are privileged, as provided by law. Any such hearing shall be held in the superior court. The court shall provide sufficient time for the parties to obtain counsel and make any motions or present any evidence. The hearing shall be held within three days of the service of the warrant unless the court makes a finding that the expedited hearing is impracticable. In that case the matter shall be heard at the earliest possible time." (Italics added.)

Subdivision (e) of section 1524 indicates an order of disclosure would not be proper absent judicial examination of the bases of the parties' claims. This subdivision allows the party serving the warrant to accompany the special master as the search is conducted. "However, that party or his or her designee shall not participate in the search nor shall he or she examine any of the items being searched by the special master except upon agreement of the party upon whom the warrant has been served." This provision, along with the requirement that the special master seal all items, simply upon the statement of the party served (§ 1524, subd. (c)(2)), appear designed specifically to prevent disclosure of possibly privileged documents. These provisions become meaningless if the trial court can order disclosure without examination of the items claimed to be privileged, even if on the basis of a search warrant supported by probable cause, which was not subjected to adversarial testing.

---

[5]No question has been raised regarding the applicability of section 1524. The search warrant specifically identified the search was to be conducted pursuant to this provision.

[6]Section 1524, subdivision (d), provides, "As used in this section, a 'special master' is an attorney who is a member in good standing of the California State Bar and who has been selected from a list of qualified attorneys which is maintained by the State Bar particularly for the purposes of conducting the searches described in this section."

[7]Geilim raised objections regarding the conduct of the search of his office which are not in issue on this petition.

■ In light of the statutory language expressly providing for the sealing of the documents, upon the served party's statement, and the requirement they be taken to court for a hearing, it is obvious that the issue of privilege must be addressed at that hearing before disclosure is allowed.

### 2. *In Camera Disclosure*

The question then becomes, what provides a *basis* for a trial court's ruling on the disclosure of seized documents under a claim of privilege?

Before the 1979 amendment, the trial court could not require in camera disclosure; now it can do so, for the limited purpose of ruling on the claim of privilege.

In *Deukmejian* v. *Superior Court, supra,* 103 Cal.App.3d 253, at pages 259-260, the appellate court explained that the amendment to the Penal Code adding subdivision (c) to section 1524, ". . . necessitated a long overdue modification of Evidence Code section 915, subdivision (a) which heretofore had created the anomalous situation of an otherwise trusted judge not being allowed to require disclosure of actual documents claimed subject to the attorney-client privilege in order to rule on the claim of privilege. (*Romo* v. *Southern Pac. Transportation Co.* (1977) 71 Cal.App.3d 909, 922.1 [139 Cal.Rptr. 787].)" (Fn. omitted.)

Subdivision (a) of Evidence Code section 915[8] now provides that in a section 1524, subdivision (c) hearing, "in which a claim of privilege is made and the court determines that there is no other feasible means to rule on the validity of such claim other than to require disclosure, the court shall proceed in accordance with subdivision (b)."

---

[8]Evidence Code section 915 provides in full:

"(a) Subject to subdivision (b), the presiding officer may not require disclosure of information claimed to be privileged under this division in order to rule on the claim of privilege; provided, however, that in any hearing conducted pursuant to subdivision (c) of Section 1524 of the Penal Code in which a claim of privilege is made and the court determines that there is no other feasible means to rule on the validity of such claim other than to require disclosure, the court shall proceed in accordance with subdivision (b).

"(b) When a court is ruling on a claim of privilege under Article 9 (commencing with Section 1040) of Chapter 4 (official information and identity of informer) or under Section 1060 (trade secret) and is unable to do so without requiring disclosure of the information claimed to be privileged, the court may require the person from whom disclosure is sought or the person authorized to claim the privilege, or both, to disclose the information in chambers out of the presence and hearing of all persons except the person authorized to claim the privilege and such other persons as the person authorized to claim the privilege is willing to have present. If the judge determines that the information is privileged, neither he nor any other person may ever disclose, without the consent of a person authorized to permit disclosure, what was disclosed in the course of the proceedings in chambers."

Upon a colorable claim of privilege, the trial court cannot order the unsealing of seized documents until the validity of the claim is determined. If the only means to assess the validity of the claim requires examination of the purported privileged documents, the trial court must examine the documents in camera with only the person from whom disclosure is sought or the person authorized to claim the privilege, or both, and any other person authorized by the holder to be present. "If the judge determines that the information is privileged, neither he nor any other person may ever disclose, without the consent of a person authorized to permit disclosure, what was disclosed in the course of the proceedings in chambers." (§ 915, subd. (b).)

## 3. *The Crime/Fraud Exception*

Evidence Code section 956 creates an exception to the attorney-client privilege: "There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud."

■ This is a very limited exception to the privilege. As stated by the California Supreme Court recently, "Cases decided since the adoption of the Evidence Code recognize the limited nature of the exception to the attorney-client ·privilege created by Evidence Code section 956: 'This exception is invoked only when a client seeks or obtains legal assistance "to enable or aid" one to commit a crime or fraud. The quoted language clearly requires an intention on the part of the client to abuse the attorney-client relationship, . . .' (*Glade* v. *Superior Court* (1978) 76 Cal.App.3d 738, 746 [143 Cal.Rptr. 119]. See also, *BP Alaska Exploration Inc.* v. *Superior Court* (1988) 199 Cal.App.3d 1240, 1249 [245 Cal.Rptr. 682]: 'Evidence Code section 956 codifies the common law rule that the privilege protecting confidential attorney-client communications is lost if the client seeks legal assistance to plan or perpetuate a crime or fraud.')" (*People* v. *Clark* (1990) 50 Cal.3d 583, 622-623 [268 Cal.Rptr. 399, 789 P.2d 127] [Admission of privileged communication was harmless error.].) However, the *proponent* of the exception bears the burden of proof of the existence of crime or fraud. (See *Cooke* v. *Superior Court* (1978) 83 Cal.App.3d 582 [147 Cal.Rptr. 915].)

■ The prosecutor argues, and the trial court appears to have held, that the "probable cause" requirement for issuance of the search warrant was sufficient to establish a prima facie crime/fraud exception to the lawyer-

client privilege (Evid. Code, § 954) and attorney's work product doctrine (Code Civ. Proc., § 2018.)[9]

Such a ruling however fails to address the absolute protection for "[a]ny writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories" pursuant to the work product rule (Code Civ. Proc., § 2018, subd. (c)), which is not subject to the crime/fraud exception. (*BP Alaska Exploration, Inc.* v. *Superior Court, supra,* 199 Cal.App.3d 1240, 1249-1251.)[10]

Furthermore, it *presumes* that all the items seized pursuant to the warrant fell within the crime/fraud exception and also disregards the possibility that items *outside the scope of the warrant* were seized, either by mistake or misapprehension of their content, which the special master clearly indicated was the case in regard to some of the seized materials.[11]

The requirement of an in camera review to determine a claim of privilege is consistent with a recent opinion of the United States Supreme Court. Indeed, the Supreme Court also made it clear that the alleged privilege stands until the party seeking disclosure presents evidence sufficient to establish an exception. In *United States* v. *Zolin* (1989) 491 U.S. 554 [105

[9]On the other hand, the trial judge's comments also indicate that she believed disclosure would not violate any privileges or privacy rights and that they would be addressed later in the section 1538.5 hearing in which the issue of the admissibility of the seized documents would be determined. (See pt. 4, *post.*)

Geilim contends the People have misconstrued the record by claiming that the trial court already ruled on the privilege issues and the fraud exception. Although the People claim that the only order the trial court made was the unsealing of the seized material and recognized that all the 1538.5 issues and privilege issues are still pending, the thrust of the People's argument is that "privileges evaporate upon a prima facie showing of an exception shown by affidavit."

[10]The People argue that the attorney work product doctrine does not apply when the People have not been a party to the litigation which generated the documents in issue. The People's reliance on *Kizer* v. *Sulnick* (1988) 202 Cal.App.3d 431 [248 Cal.Rptr. 712] is misplaced. *Kizer* addressed the discoverability of a medical study of health effects, attorney work product subject to the conditional or qualified privilege. The Department of Health Services sought production of documents in connection with an administrative investigation of possible health hazards posed by a certain waste facility. In determining whether good cause existed, the court balanced the need for disclosure, which was characterized as "significant," against the purpose of the work product doctrine, which would not be served in that case: to preserve the rights of attorneys to prepare cases for trial and to prevent an attorney from taking undue advantage of his adversary's industry or effort. (*Id.,* at p. 441.) In the instant case, the People seek evidence to be used against the attorneys' clients, obviously an adversarial setting. The People state they do not seek disclosure of absolutely privileged attorney work product, but fail to address the problem of complete disclosure of all the seized property, without first determining which are absolutely privileged.

[11]These he physically sealed. These are the documents the trial court refers to as "sealed sealed" as opposed to "unsealed sealed" documents.

L.Ed.2d 469, 109 S.Ct. 2619], the court addressed the issue of disclosure of privileged materials under the federal rules of evidence. The Criminal Investigation Division of the Internal Revenue Service (IRS) sought to obtain two tapes of a church, which were held under seal in the custody of the California state court clerk. The IRS argued the tapes fell within the crime/fraud exception to the attorney-client privilege claimed by the church.

The Supreme Court held that disclosure to the court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege. (491 U.S. at p. 568 [105 L.Ed.2d at p. 488].) Therefore, upon the request of the party opposing the application of the attorney-client privilege, the federal district court may engage in in-chambers review of the materials allegedly subject to the privilege in order to determine the applicability of the exception. Because under federal rules an in-chambers review is not always permissible, the party seeking disclosure must demonstrate a factual basis adequate to support a good faith belief by a reasonable person that in-chambers review may reveal evidence to establish the claim that the crime/fraud exception applies. Otherwise, the privilege stands.

### 4. *Destruction of the Privileges*

If the trial court did not render any ruling regarding the status of the claimed privileges, but simply ordered disclosure with the expectation that the privilege issues could be determined later, *after* examination by the People, it erred.

Such a ruling flies in the face of Evidence Code section 917 which creates a presumption of confidentiality of attorney-client communications and places the burden of proof to establish a communication was not privileged upon the opponent of the privilege. Once the People have free access to all of the seized documents, a substantial component of their privileged nature is forever destroyed. This is so even if the People never use the privileged matter against the holder of the privilege. At the very minimum, it invades the right of privacy of innocent clients. Certainly forced disclosure to the government, without a hearing, implicates the privilege holder's due process rights.

### 5. *The Quantity of Seized Property*

The trial judge ordered disclosure, in part because an in camera examination appeared impractical.

We appreciate that an in camera review of documents claimed to be privileged, to determine the applicability of the crime/fraud exception, in this case may be burdensome and time-consuming. However, the very fact that such a large quantity of material was seized increases the likelihood that privileged documents were swept up along with legally seized property. This factor does not allow a short cut to the required procedure. To rule otherwise may encourage wholesale seizure of voluminous documents rather than sharply focused searches.

### DISPOSITION

Petition for writ of mandate/prohibition is granted. We hereby order the superior court to conduct an in camera proceeding in accordance with this opinion.

Klein, P. J., and Croskey, J., concurred.