[No. B085710. Second Dist., Div. Four. Aug. 31, 1995.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BAUMAN & ROSE et al., Real Parties in Interest.

COUNSEL

Gil Garcetti, District Attorney, Brent Riggs, Diana L. Summerhayes and Brentford J. Ferreira, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Michaelson & Levine, Alvin S. Michaelson, Janet I. Levine, Eric Honig, Kaplan, Kenegos & Kadin, Joan Kenegos and Richard A. Moss for Real Parties in Interest.

## OPINION

**WOODS (A. M.), P. J.**—This purported appeal is brought by the Los Angeles District Attorney on behalf of the People from an order of the superior court sealing certain documents seized during a search of respondents' law offices pursuant to a valid search warrant. The putative respondents are the law offices of Bauman & Rose, Lake and Levine and Donald Lake and Howard Levine, and Denise Breakman.

Preliminarily, we must address the issue of appealability. The district attorney urges us to deem respondents' motions to seal the documents seized from their offices to constitute a special proceeding as to which the court's order granting that request is a final judgment and therefore appealable. (Code Civ. Proc., § 1064 [a "judgment in a special proceeding is the final determination of the rights of the parties therein."].) The district attorney, however, fails to cite any relevant authority that supports this theory of appealability. The cases on which he relies not only involve completely different circumstances than those presented here but have in common the fact that they were orders made after a judgment. (*In re de la O* (1963) 59 Cal.2d 128 [28 Cal.Rptr. 489, 378 P.2d 793] [commitment after conviction to California Rehabilitation Center under former Penal Code section 6450]; *Oak Grove School Dist.* v. *City Title Ins. Co.* (1963) 217 Cal.App.2d 678 [32 Cal.Rptr. 288] [order to tax costs made after entry of judgment]; *People* v. *Munoz* (1973) 31 Cal.App.3d 87 [107 Cal.Rptr. 451] [commitment after conviction under Welfare and Institutions Code section 3051 for narcotic addiction].) In the case before us, there is, of course, no underlying judgment; nor does the order satisfy the requirement of Code of Civil Procedure section 1064 of being a "final determination" of the rights of the parties involved in the matter. Accordingly, there being no appealable order, we must dismiss the appeal. (Code Civ. Proc., § 904.1.)

In order to reach the important issue presented by this case, we exercise our discretion to treat the appeal as a petition for writ of mandate.

(*G. E. Hetrick & Associates, Inc.* v. *Summit Construction & Maintenance Co.* (1992) 11 Cal.App.4th 318, 326, fn. 5 [13 Cal.Rptr.2d 803].) Henceforth, we refer to the district attorney as petitioner and the lawyers and law firms collectively as real parties. We proceed to the merits of the case.

On October 4, 1993, Judge Lance Ito of the Los Angeles Superior Court issued search warrant No. 35941 which commanded the search of 31 locations that were all either legal or medical offices. Among the locations searched were real parties' offices. Pursuant to Penal Code section 1524, subdivision (c), special masters were appointed for some of the locations. A special master was appointed for Breakman's office because she shared it with an attorney who was not a target of this criminal investigation. No special masters were appointed for the search of the offices of the other real parties herein.[1] The purpose of the investigation was to uncover evidence of insurance fraud. Among the items as to which the search warrant authorized seizure were numerous client files.

The searches were conducted on October 6 and 7, 1993. On October 6, 1993, real parties filed motions in which they requested that the court seal the documents seized from their offices until a hearing could be conducted to determine the applicability of the attorney-client privilege. Petitioner opposed the motions on the grounds that under Penal Code section 1524, subdivision (c), only nonsuspect lawyers were entitled to such hearing and Judge Ito's issuance of the search warrant as to real parties' offices without appointment of a special master was a finding that real parties were reasonably suspected of engaging in criminal activity and not entitled to the special master procedure.

On October 12, 1993, a hearing was conducted on real parties' motions. On January 14, 1994, Judge Ito issued a lengthy minute order in which he posed the question before him as whether "the holder of a professional privilege who is reasonably suspected of engaging or having engaged in

---

[1]Penal Code section 1524, subdivision (c) provides, in part, that "no search warrant shall issue for any documentary evidence in the possession or under the control of any person, who is a lawyer as defined in Section 950 of the Evidence Code . . . , and who is not reasonably suspected of engaging or having engaged in criminal activity related to the documentary evidence for which a warrant is requested" unless a special master is appointed to oversee the search. Where the attorney at whose office the search is being conducted states that the items should not be disclosed, the special master is required to seal the items and take them to court for a hearing at which "the party searched shall be entitled to raise any issues which may be raised pursuant to [Penal Code] Section 1538.5 as well as any claim that the item or items are privileged, as provided by law." The hearing must take place within three days of the service of the warrant unless the court finds that the expedited hearing is impracticable. (Pen. Code, § 1524, subd. (c) (1)-(2).) This section also applies to searches of the offices of nonsuspect physicians, pyschotherapists and members of the clergy.

criminal activity [is] entitled to a hearing and an *in camera* review before the seized items are examined by law enforcement." The judge summarized petitioner's position as follows: "The District Attorney contends that it is entitled to free and unfettered access to the items seized, that in issuing the search warrant the court has made a determination that there is probable cause to believe criminal acts have been committed thereby making the Special Master and hearing procedure of Penal Code Section 1524 (c) inapplicable." In rejecting this argument, the court relied on *Deukmejian* v. *Superior Court* (1980) 103 Cal.App.3d 253, 260 [162 Cal.Rptr. 857], in which Division Three of this court observed that "[t]he mere fact [an] . . . attorney[] [is] charged with crimes creates a distinction without a difference when we are dealing with considerations affecting privileged material. An attorney suspected of criminal activity should have the same concerns about the confidentiality of files containing privileged matter as an innocent third party attorney who allegedly possesses and controls files containing evidence of criminal conduct." Judge Ito then concluded that the weight of "statutory authority, both in the Penal Code and Evidence Code, plus the supporting case law supports the objectors' position that they are entitled to a hearing and an *in camera* review before the items seized are turned over to law enforcement." He ordered real parties to make application to the court for an order declaring the privilege to apply to whatever items they specified in their application.

Evidently, the January 14 order was not served on either petitioner or real parties until April 25, 1994. On that date, Judge Ito made the January order effective nunc pro tunc to April 25. On May 10, 1994, real parties Lake and Levine filed an application for an in camera review of the documents seized from their law office to determine if any of them were privileged. In response, petitioner filed a request for clarification of the court's nunc pro tunc order of April 25 as to whether the court's order required sealing of all the documents as to which the privilege might be claimed. On June 22, 1994, the court ordered that all seized documents be sealed until further order of the court.

We affirm the trial court's ruling and deny the petition.[2]

The initial issue in this case is whether an attorney suspected of criminal activity is entitled to an in camera hearing on the applicability of the attorney-client privilege to client files seized from the attorney's office

---

[2]At the same time he filed his notice of appeal, the district attorney also filed a petition for writ of mandate. We denied the writ by order of September 14, 1994, under the impression that the appeal was valid.

pursuant to a valid search warrant or if the privilege has been waived on grounds of the crime/fraud exception to the privilege. (Evid. Code, § 956.)[3]

We agree with petitioner that special master procedure set forth in Penal Code section 1524, subdivision (c) (henceforth section 1524) does not apply to attorneys suspected of criminal activity. (*PSC Geothermal Services Co.* v. *Superior Court* (1994) 25 Cal.App.4th 1697, 1702, fn. 4 [31 Cal.Rptr.2d 213] ["If the attorney himself is a suspect in criminal activity, then the special master provision does not apply. [Citation.]"].) We disagree, however, with petitioner's further claim that this statutory omission precludes a suspect attorney from ever asserting the privilege on behalf of a client whose file has been seized pursuant to a valid search warrant. Nothing in the language of section 1524 or its legislative history purports to abrogate the attorney-client privilege between a suspect attorney and his or her client. Rather, section 1524 was intended to provide special protections to four specified classes of privilege holders, lawyers, doctors, psychotherapists and clerics, when, pursuant to a valid search warrant, a search is conducted on premises owned or controlled by them for evidence of crime but they themselves are not suspected of any criminal activity. It does not reach the issue of the assertion of the attorney-client privilege by a suspect attorney.

Subdivision (c) of section 1524 was enacted by the Legislature in response to *Zurcher* v. *Stanford Daily* (1978) 436 U.S. 547 [56 L.Ed.2d 525, 98 S.Ct. 1970]. In *Zurcher,* the Supreme Court held that a search of the offices of a university newspaper, which was not involved in any criminal activity, for photographs of demonstrators who had assaulted police officers did not offend the Fourth Amendment's ban against unreasonable searches and seizures. The court concluded: "[T]he Amendment has not been a barrier to warrants to search property on which there is probable cause to believe that fruits, instrumentalities, or evidence of crime is located, whether or not the owner or possessor of the premises to be searched is himself reasonably suspected of complicity in the crime being investigated." (*Id.* at pp. 549-550 [56 L.Ed.2d at p. 531].) Immediately following *Zurcher,* section 1524 was amended to bar search warrants that authorize searches of items protected by the newsperson's privilege. (§ 1524, subd. (g); Evid. Code, § 1070.) A year later, in 1979, section 1524 was again amended with the addition of subdivision (c) to provide rules for the execution of search warrants involving documents or other material in the control of other privilege holders, specifically lawyers, doctors, psychotherapists and clerics, who were not suspected of criminal activity.

---

[3]Evidence Code section 956 states: "There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud."

In essence, the special master procedure set forth in section 1524, subdivision (c) requires: (1) that a search of premises owned or controlled by a nonsuspect privilege holder must be overseen by a special master; (2) that any item as to which the privilege holder asserts the privilege, or gives some other reason precluding disclosure, must be sealed on the spot; and (3) that a hearing must be held within three days of the service of the warrant, or as expeditiously as otherwise possible, on the privilege holder's assertion of the privilege or "any issues which may be raised pursuant to [Penal Code] Section 1538.5 . . . ." (§ 1524, subd. (c)(1)-(2).) Accordingly, subdivision (c) by its express language is limited to search situations involving nonsuspect attorneys and it is silent as to assertion of the privilege by a suspect attorney. Petitioner asks us to interpret this statutory silence as reflecting a legislative intent to deny a suspect attorney the right to assert the privilege. (3) Under the relevant rule of statutory construction, however, " 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citation.]" (*People* v. *Gibbons* (1989) 215 Cal.App.3d 1204, 1208 [263 Cal.Rptr. 905], quoting *People* v. *Knowles* (1950) 35 Cal.2d 175, 183 [217 P.2d 1].)

■ The legislative history is no more supportive of petitioner's position than is the express language of the statute. Our review of that history discloses a single reference relevant to the issue before us, from an analysis of the bill by the Governor's office that notes, "[e]xisting statutes that allow privileges also contain exceptions that the privileges do not apply if the services of the professional were sought for criminal reasons. See Evidence Code [section] 956 (Lawyers) . . . . *Thus, any attempts to hinder the investigation by assertion of a non-existent privilege should be overruled by the court.*" (See Governor's off., Dept. of Legal Affairs, Enrolled Bill Rep., Assem. Bill No. 1609 (1979-1980 Reg. Sess.) Sept. 20, 1979.) The implication of the emphasized language is that the applicability of the privilege when asserted by a suspect attorney is to be decided by the court, not the law enforcement agency carrying out the search. Other than this comment, the legislative history is as unrevealing as the face of the statute on the right of a suspect attorney to assert the privilege. Accordingly, the answer must be found by examination of the nature of the attorney-client privilege and the court's inherent power to determine its applicability.

Evidence Code section 954 states that ". . . the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ." (Evid. Code, § 954.) ■ "The attorney-client privilege defined by Evidence Code section 954 authorizes a client to refuse to disclose, and to

prevent others from disclosing, information communicated in confidence to the attorney and legal advice received in return. The objective of the privilege is to enhance the value which society places upon legal representation by assuring the client the opportunity for full disclosure to the attorney unfettered by fear that others will be informed. [Citation.] While the privilege belongs only to the client, the attorney is professionally obligated to claim it on his client's behalf whenever the opportunity arises unless he has been instructed otherwise by the client. (Evid. Code, § 955; Bus. & Prof. Code, § 6068, subd. (e).)" (*Glade* v. *Superior Court* (1978) 76 Cal.App.3d 738, 743 [143 Cal.Rptr. 119].)

 The fact that the attorney is suspected of criminal activity does not lessen the client's interest in the confidentiality of his or her files, or obviate the privilege with respect to those files. As we have noted, a suspect attorney no less than a nonsuspect attorney is entitled to assert the privilege on behalf of his or her client and to have that claim adjudicated by the court. This conclusion is supported by *Deukmejian* v. *Superior Court, supra,* 103 Cal.App.3d at page 260, and by analogy, *PSC Geothermal Services Co.* v. *Superior Court, supra,* 25 Cal.App.4th 1697.

In *PSC Geothermal,* the district attorney, pursuant to a valid search warrant, searched the offices of environmental consultants retained by a law firm to assist in preparing a defense against potential criminal and civil lawsuits against the petitioner arising from allegations of improper disposal of geothermal filters at a landfill. Among the items seized was correspondence between the environmental consultants and petitioner's attorneys which was claimed to be privileged. In the ensuing writ proceeding, petitioner asserted that the special master procedure of section 1524 should apply not only to searches of nonsuspect privilege holders but also consultants hired by those privilege holders. The Court of Appeal rejected this argument on the grounds that section 1524, subdivision (c) was limited only to those privilege holders specifically listed therein. (*PSC Geothermal Services Co.* v. *Superior Court, supra,* 25 Cal.App.4th at pp. 1702-1707.)

The court then went on to say, however, that even though the special master procedure did not apply "it does not follow that the execution of the search warrant was beyond the court's control. [¶] The District Attorney assumes that if section 1524 does not apply, then the allegedly privileged documents and work product lose their protection and are freely discoverable. Whether the documents here are privileged, however, does not depend on section 1524 but on whether, pursuant to Evidence Code section 950 et seq., there has been confidential communication between attorney and client which has not been disclosed." (*PSC Geothermal Services Co.* v. *Superior*

*Court, supra*, 25 Cal.App.4th at p. 1708.) After reviewing the purposes of the privilege and the work product rule, the court noted that the search in that case appeared to be, in part, an attempt to penetrate " the defense theories of the case by obtaining communications among possible defendants, their attorneys and consultants. Unlike other searches, this search pits a defendant's Sixth Amendment protections against the prosecution's pursuit of a criminal investigation." (*Id.* at p. 1710.) The court then concluded that the appropriate mechanism by which the trial court could "meet both its responsibility under the Fourth Amendment to issue search warrants as well as its responsibility under the Sixth Amendment to protect the right to counsel" was by conducting an in camera hearing "to determine whether the materials are covered by the attorney-client or work product privileges and therefore should not be disclosed to the government." (*Id.* at p. 1711.)

We recognize, of course, that *PSC Geothermal* does not mirror the case before us. Such factual differences as exist, however, are less important than the court's analysis of the relationship between section 1524, subdivision (c) and a trial court's inherent power to determine the applicability of the attorney-client privilege in situations not governed by section 1524. Indeed, there is even statutory authority for the trial court's power to make this determination in Penal Code section 1536. Under that section, items taken pursuant to a warrant "must be retained by the officer in his custody, subject to the order of the court to which he is required to return the proceedings before him, or any other court in which the offense in respect to which the property or things taken is triable." (Pen. Code, § 1536.) We conclude that a trial court has the authority to hold an in camera hearing to determine the validity of the assertion of the attorney-client privilege by an attorney suspected of criminal activity, notwithstanding section 1524.

Although not a case involving assertion of the attorney-client privilege, our decision in *People* v. *Hepner* (1994) 21 Cal.App.4th 761 [26 Cal.Rptr.2d 417], supports our conclusion here. In *Hepner*, a search was conducted of a pyschiatrist's office pursuant to a search warrant based on information that the doctor was participating in insurance fraud. Following his conviction, the pyschiatrist appealed, contending that the seizure of his patients' files violated their state and federal constitutional right to privacy. Citing *McKirdy* v. *Superior Court* (1982) 138 Cal.App.3d 12 [188 Cal.Rptr. 143], a case involving similar facts, we rejected the privacy claim on the grounds that the magistrate's decision to issue the warrant sufficiently implied a determination that the patient's privacy rights should give way to the limited extent necessary to execute the search warrant. (*People* v. *Hepner, supra*, at p. 784.) We went on to note, however, that had the court been concerned with the privacy issue, it "maintained ultimate control over this property and could

have issued protective orders to prevent improper disclosures if necessary." (*Id.* at p. 785.)

■ Petitioner also cites the *McKirdy* case, to support the contention that the finding of probable cause to issue the warrant implies a determination by the issuing magistrate that the attorney-client privilege has been waived by the crime/fraud exception and no further hearing on the question is necessary. ■ It is true that the attorney-client privilege is not absolute. In general, "[s]ince the privilege serves to suppress relevant facts, it is to be strictly construed. [Citation.]" *(Grover* v. *Superior Court* (1958) 161 Cal.App.2d 644, 646 [327 P.2d 212].) Specifically, Evidence Code section 956 sets forth an exception to the privilege "if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud." (Evid. Code, § 956.)[4] ■ Petitioner's contention of waiver was, however, specifically rejected by Division Three of this court in *Geilim* v. *Superior Court* (1991) 234 Cal.App.3d 166 [285 Cal.Rptr. 602].

In *Geilim,* client files were removed from a nonsuspect attorney's office pursuant to a valid search warrant. The attorney then filed a motion for return of the seized property because it was privileged. The trial court denied the motion on the grounds that the existence of probable cause to support the search warrant waived the privilege. The appellate court rejected this reasoning because "it presumes that all the items seized pursuant to the warrant fell within the crime/fraud exception and also disregards the possibility that items outside the scope of the warrant were seized, either by mistake or misapprehension of their content, which the special master clearly indicated was the case in regard to some of the seized materials." (*Geilim* v. *Superior Court, supra,* 234 Cal.App.3d at p. 175, fn. omitted; *In re Impounded Case (Law Firm), supra,* 879 F.2d at p. 1214 [rejecting argument that probable cause finding "triggered the application of the crime-fraud exception without more . . . ."].)

We agree with *Geilim.* The probable cause showing for the warrant does not obviate the need for an in camera hearing on whether the privilege

---

[4]Real parties suggest that the crime/fraud exception applies, literally, only when the client is the party engaged in criminal activity and has no application where the attorney instigates the crime or fraud in which the client then joins. We reject this interpretation of that exception. Where the entire attorney-client relationship is embarked upon in furtherance of criminal activity, and the relationship is permeated by criminal activity and the client takes an active part in it, the crime/fraud exception is satisfied, notwithstanding that it may have been the attorney who originally conscripted the client for the illegal purpose. *(In re Impounded Case (Law Firm)* (3d Cir. 1989) 879 F.2d 1211, 1213-1214.) In reviewing the seized files, if the trial court determines that the client was an active participant in criminal activity, the privilege is waived nothwithstanding any assertion that it was the attorney who initiated that activity.

applies to seized materials. In addition to the concern stated by the *Geilim* court, we also note that the standard by which probable cause is judged to obtain a search warrant is quite different from the showing which must be made to defeat the attorney-client privilege under the crime/fraud exception. The procedure for obtaining a search warrant involves an ex parte presentation to the magistrate of an affidavit by the law enforcement officer seeking the warrant and requesting the magistrate to issue the warrant based on " 'the probability, and not a prima facie showing, of criminal activity . . . .' [Citations.]" (*Illinois* v. *Gates* (1983) 462 U.S. 213, 235 [76 L.Ed.2d 527, 546, 103 S.Ct. 2317]; *People* v. *Von Villas* (1992) 11 Cal.App.4th 175, 217 [15 Cal.Rptr.2d 112] ["To establish probable cause, one must show a probability of criminal activity; a prima facie showing is not required."].)

By contrast, in order to establish the crime/fraud exception to the privilege, "the party opposing the privilege must establish a prima facie case of fraud. [Citations.] [T]he party must also establish a reasonable relationship between the fraud and the attorney-client communication. [Citation.]" (*Cunningham* v. *Connecticut Mut. Life Ins.* (S.D.Cal. 1994) 845 F.Supp. 1403, 1412.) It appears, therefore, that the probable cause showing to obtain a search warrant does not satisfy the showing required to establish the crime-fraud exception to the attorney-client privilege. Furthermore, as *Geilim* points out, there is always the possibility that either by mistake or misunderstandings items may be seized which are outside of the scope of the warrant. For both reasons, a judge, rather than the officer executing the warrant, should determine the applicability of the privilege.

*McKirdy* v. *Superior Court, supra,* 138 Cal.App.3d 12, does not compel a different result. *McKirdy* involved a search of a suspect pyschiatrist's home and office and the seizure of patient files in connection with an insurance fraud investigation. The pyschiatrist sought to quash the warrant on grounds that the seizure of his patient's files violated their right of privacy. The appellate court rejected this claim, concluding that the magistrate's issuance of the search warrant implied a determination that the patients' privacy rights "should give way to the limited extent necessary to permit execution of the search warrant." (*McKirdy* v. *Superior Court, supra,* at p. 23.) As previously noted, while we followed *McKirdy* in *Hepner,* a case involving similar facts, we also went on in *Hepner* to make the point that a court retains the power to make protective orders to prevent disclosure of materials seized in a search notwithstanding an earlier finding of probable cause to issue the warrant. (*People* v. *Hepner, supra,* 21 Cal.App.4th at p. 785.) In fact, *McKirdy* itself addressed this issue, albeit in dicta, when the court there suggested that as precaution against the improper invasion of a patient's privacy right "[t]he warrant might properly have incorporated provision . . .

for early screening and for prompt return of matter not clearly relevant to the criminal investigation, perhaps subject to review at a hearing to be noticed once the search was complete." (*Id.* at p. 23.) Accordingly, even *McKirdy* cannot be said to support the proposition that the issuance of a search warrant is tantamount to a finding that all professional privileges are waived so as to preclude an assertion of those privileges after the search.

Petitioner also contends that the privilege does not apply when the attorney is suspected of a criminal activity regarding the specific documents described in the search. This is no more than a restatement of the claim that the probable cause finding implies waiver of the privilege and we reject it. None of the cases cited by petitioner in support of this argument alter our conclusion.

In a related argument, petitioner maintains that the privilege has been waived with respect to the files seized in the search because they contain information with which real parties intended to further their criminal activity. For this proposition, he cites *U.S.* v. *Oloyede* (4th Cir. 1992) 982 F.2d 133. Petitioner, however, neglects to point out to this court the following crucial language in that case: "Since we find that the [attorney-client] privilege was waived by a lack of intent to keep the communications confidential, we do not address the alternative rationale that the privilege would be waived because both the attorney and his clients were engaged in criminal behavior." (*Id.* at p. 141.) Thus, *Oloyede* does not even reach the issue for which petitioner cites it. In any event, petitioner's argument misses the mark since, obviously, if the trial court determines the files contain information in furtherance of fraud or criminal activity, the privilege is waived. It is the trial judge, however, and not the investigators executing the search warrant who is entitled to make this determination.

■ A final issue lurking in this case is whether attorney work product can be disclosed under the crime/fraud exception to the attorney-client privilege. Work product is governed by a different statute than attorney-client privilege. Code of Civil Procedure section 2018, subdivision (b) states in part that ". . . the work product of an attorney is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice." Subdivision (c) provides: "Any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances." (Code Civ. Proc., § 2018, subd. (c).) In *BP Alaska Exploration, Inc.* v. *Superior Court* (1988) 199 Cal.App.3d 1240 [245 Cal.Rptr. 682], the court held that the crime/fraud exception to the attorney-client privilege does not apply to attorney work

product because, by its terms Penal Code section 956 "expressly applies to communications ordinarily shielded by the attorney-client privilege," while the "work product rule encompasses a companion but separate document protection." (199 Cal.App.3d at p. 1249.)

*BP Alaska*, however, did no more than hold that the crime/fraud exception does not apply to the opinion work product documents referred to in subdivision (c) of Code of Civil Procedure section 2018 which are "not . . . discoverable under any circumstances." The work product referred to in subdivision (b), however, is discoverable to the extent that denial of disclosure will prejudice the party seeking discovery or work an injustice. (Code Civ. Proc., § 2018, subd. (b).) Furthermore, it is the burden of the party asserting the work product privilege to prove that the material in question is work product and therefore privileged. (*BP Alaska Exploration, Inc.* v. *Superior Court, supra*, 199 Cal.App.3d at p. 1252 ["the party asserting a privilege has the burden of proving the essential elements of the privilege. [Citation.]"].) To the extent, therefore, that real parties may be asserting that work product cannot be disclosed under any circumstances, that clearly is not the case.

On the other hand, we reject petitioner's contention that all work product is disclosable by the addition of Proposition 8 of section 28, subdivision (d) to article I of the state Constitution. That section specifically exempts "existing statutory rule[s] of evidence relating to privilege . . . ." (Cal. Const., art. I, § 28, subd. (d).) Furthermore, while it is true that under the federal rules of civil procedure the crime/fraud exception applies to work product, that rule was rejected in *BP Alaska* because of the differences between the federal and state codes. (*BP Alaska Exploration, Inc.* v. *Superior Court, supra*, 199 Cal.App.3d at pp. 1250-1251.)

The trial court correctly ruled that an in camera hearing is required to determine whether the attorney-client or work product privilege applies to the client files seized in the search of real parties' offices. Accordingly, the petition for writ of mandate is denied.

Vogel (C. S.), J., and Hastings, J., concurred.

A petition for a rehearing was denied September 20, 1995, and petitioner's application for review by the Supreme Court was denied November 30, 1995.