[No. B138892. Second Dist., Div. Six. Apr. 16, 2001.]

GREEN & SHINEE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Nasatir, Hirsch, Podberesky & Genego and William J. Genego for Petitioner.

No appearance for Respondent.

Steve Cooley, District Attorney, Brent Riggs and William Woods, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**GILBERT, P. J.**—Here we conclude that reports prepared by police officers in the performance of their duties are not protected by the attorney-client privilege.

The law firm of Green & Shinee attempts to appeal an order by the trial court that releases documents seized from the law firm's offices and sealed by a special master pursuant to Penal Code section 1524, subdivision (c).[1] We treat the purported appeal as a petition for writ of mandate. (*People v. Superior Court (Bauman & Rose)* (1995) 37 Cal.App.4th 1757, 1761-1762 [44 Cal.Rptr.2d 734].) We consider the merits of the petition and deny it.

## FACTS

During the evening of January 19, 1999, off-duty deputies of the Los Angeles County Sheriff's Department attended a hockey game. Thereafter, Deputies Gary Gerlach, Ivan Chavez, Guillermo Morales, and Craig Roberts went to Tam's Restaurant in Lynwood. Inside the restaurant, a patron began to harass and threaten them, stating: "I don't give a fuck if you['re] a cop or a fireman. I've got two strikes and I'll kick your white ass." Earlier, restaurant employees noticed the patron harassing other customers.

The patron suddenly punched Deputies Gerlach and Chavez, causing them minor injuries. The deputies attempted to restrain the man, but he broke away and fled the restaurant. His identity remains unknown.

Soon after, at approximately 1:30 a.m., other sheriff's deputies responded to a call from the restaurant concerning the incident. Sergeant Victor Lopez ordered each of the four deputies to write a supplemental report of the incident "to detail their actions." Sheriff's department procedure or policy requires supplemental reports or memorandums from officers involved in forceful incidents whether they are on duty or off duty. The police report describing the incident noted that the deputies would be filing supplemental reports.

Sometime later that morning, Sergeant Lopez saw Deputies Morales and Roberts in a patrol car. They asked Lopez if he wanted "a supplemental report or [a] memo" concerning the incident. Lopez ordered them to write a supplemental report and "turn [it] in."

The four deputies believed, however, that they were to "hold off" on writing any reports. They interpreted Lopez's instructions as ambiguous and conflicting. Deputy Morales testified: "[Sergeant Lopez] was unsure exactly what was to be written, if anything . . . and he had told all of us to hold off writing anything."

Within several days of the altercation, Los Angeles Sheriff's Captain Kenneth Brazile learned that an unidentified person may have seen the

---

[1]All statutory references are to the Penal Code unless stated otherwise.

incident and this person believed that the deputies engaged in misconduct. Nine days following the altercation, Brazile spoke with the witness and he then referred the matter for an internal investigation.

In the meantime, the four deputies involved in the incident did not prepare and file supplemental reports. On January 29, 1999, prior to the referral to internal investigation, Deputy Morales's supervisor ordered him to write a supplemental report of the incident. Morales did so and his supervisor read and approved the report. Morales then placed the report in the watch sergeant's tray for filing. Shortly thereafter, Morales spoke with an attorney in the petitioner law firm. The attorney advised Morales that he was under investigation for police misconduct. Morales then removed the supplemental report from the processing tray because he believed its preparation "violat[ed his] police officer bill of rights."

By then, the other three deputies also learned from the attorney that they were under investigation for misconduct. To avoid allegations of insubordination, they prepared supplemental police reports on the official forms. Instead of turning the reports over to the watch sergeant, however, the deputies gave the reports to Morales. Morales then sent them to the petitioner law firm.

The People obtained a search warrant for the supplemental reports held by the law firm. When the warrant was executed, the law firm turned the reports over to a special master, who sealed them. (§ 1524, subd. (c).)

The trial court held a hearing regarding the unsealing and release of the supplemental reports to the People. (§ 1524, subd. (c)(2).) After presentation of evidence, the trial court ordered the documents unsealed and released. It reasoned that the documents were public records that the deputies were ordered to prepare shortly after the incident. (*Jessup v. Superior Court* (1957) 151 Cal.App.2d 102, 107 [311 P.2d 177] [" ' "Any record required by law to be kept by an officer, or which he keeps as necessary or convenient to the discharge of his official duty, is a public record." ' "].)

The trial court rejected the contention that writing the reports violated the deputies' rights against self-incrimination. The trial court also disbelieved the deputies' testimony that they were instructed to "hold off" on the writing of supplemental reports.

Petitioner seeks review of the trial court's order and contends that 1) the attorney-client privilege precludes unsealing and release of the reports and 2) the trial court did not consider whether the search warrant was supported by probable cause.

DISCUSSION

I.

Petitioner argues that the trial court's order under section 1524 is appealable because it is a judgment in a special proceeding. Code of Civil Procedure section 1064 provides in part, "A judgment in a special proceeding is the final determination of the rights of the parties therein."

But *People v. Superior Court (Bauman & Rose), supra,* 37 Cal.App.4th 1757, 1761-1762, holds otherwise. The order under section 1524 is not a "final determination" of the parties. Our Supreme Court is reviewing application of Code of Civil Procedure section 1064 to Penal Code section 1524 proceedings. (*People v. Superior Court (Laff)** (Cal.App.) review granted Sept. 16, 1998, S063662 [application of reference statutes (Code Civ. Proc., § 639 et seq.) to Penal Code § 1524 proceedings].) Here we treat the matter as a petition for writ of mandate. (*People v. Superior Court (Bauman & Rose), supra,* 37 Cal.App.4th 1757, 1761-1762.)

II.

 Petitioner law firm argues that the attorney-client privilege protects the supplemental reports and precludes their release. (Evid. Code, § 950 et seq.) The law firm points out that the attorney-client privilege protects "the transmission of specific documents" to an attorney even when litigation is not pending or threatened. (*Wellpoint Health Networks, Inc. v. Superior Court* (1997) 59 Cal.App.4th 110, 119-120 [68 Cal.Rptr.2d 844].) Petitioner asserts that the deputies prepared the supplemental reports and transmitted them to the law firm for review and legal advice. It reasons that the attorney-client privilege therefore applies to protect them. (*Rodriguez v. North American Rockwell Corp.* (1972) 28 Cal.App.3d 441, 448-449 [104 Cal.Rptr. 678] [attorney-client privilege protects reports made by defendant's employees solely for defense of lawsuit and for confidential transmittal to defendant's attorney].)

 The attorney-client privilege is found in Evidence Code section 954 and generally permits the client "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ." The privilege covers all forms of communication, including transmittal of documents. (*Wellpoint Health Networks, Inc. v. Superior Court, supra,* 59 Cal.App.4th 110, 119.) Nevertheless, the privilege does not cover every document turned over to an attorney by the client. "[D]ocuments prepared independently by a party, including witness statements, do not

*Reporter's Note: For Supreme Court opinion, see *People v. Superior Court (Laff)* (2001) 25 Cal.4th 703 [107 Cal.Rptr.2d 323, 23 P.3d 563].

become privileged communications or work product merely because they are turned over to counsel." (*Ibid.*) The person claiming the attorney-client privilege must establish that the evidence sought to be protected falls within the statutory terms. (*People ex rel. Lockyer v. Superior Court* (2000) 83 Cal.App.4th 387, 397-398 [99 Cal.Rptr.2d 646].)

■■■ As the trial court properly found, the supplemental reports that the officers prepared were public records. (*People v. Pearson* (1952) 111 Cal.App.2d 9, 18 [244 P.2d 35] ["A paper written by a public official in the performance of his duties or in recording the efforts of himself and those under his command . . . is a public record and is properly in the keeping of the office."].) A public record includes those documents necessary or convenient to the discharge of a public official's duty. (*Jessup v. Superior Court*, *supra*, 151 Cal.App.2d 102, 107.)

As the trial court also found, with sufficient evidentiary support, sheriff's department procedure or policy requires a supplemental report or memorandum by any officer involved in a forceful encounter, whether on or off duty. In the morning of the incident, Sergeant Lopez ordered the four deputies to prepare supplemental reports. The deputies eventually prepared the reports in the official format. Deputy Morales gave his report to his supervisor, who read and approved it, before he placed it in the watch sergeant's filing tray. (§ 952 [generally, a confidential communication is one that is not disclosed to third persons].) The deputies testified that they prepared the reports to avoid allegations of insubordination. Thus, the trial court properly concluded that the deputies prepared the reports as part of their official duties and the reports were public records. The attorney-client privilege does not embrace matters otherwise unprivileged merely because the client has communicated those matters to his attorney. (*People ex rel. Dept. of Public Works v. Donovan* (1962) 57 Cal.2d 346, 355 [19 Cal.Rptr. 473, 369 P.2d 1].)

### III.

Petitioner contends that the trial court did not consider and rule upon its motion challenging the search warrant upon Fourth Amendment grounds. (§ 1524, subd. (c)(2) ["At the [section 1524] hearing the party searched shall be entitled to raise any issues that may be raised pursuant to Section 1538.5 . . . ."].) The law firm points out that it requested the trial court to either unseal the search warrant affidavit or alternatively, decide probable cause issues in camera.

In an in camera hearing, the trial court ordered that the prosecutor release the search warrant affidavit, deleting the names of eyewitnesses to the Tam's

Restaurant altercation. The trial court later ruled that the four deputies did not have standing to challenge the search warrant on Fourth Amendment grounds.

We have examined the four and one-half pages transcript of the in camera hearing. It concerns only the deletion of the names of eyewitnesses to the incident. The trial court did not consider the sufficiency of the warrant under the Fourth Amendment, an argument raised by the petitioner law firm on its own behalf. (§ 1524, subd. (c)(2).)

Petitioner law firm may raise any Fourth Amendment argument it desires upon return of this matter to the trial court. We express no opinion on how the court should rule. The trial court's order denying return of property otherwise was proper.

The petition for writ of mandate is denied. The parties shall bear their own costs.

Yegan, J., and Perren, J., concurred.